Anderson, J.
delivered the opinion of the court.
A check is an inlaud bill of exchange drawn on a bank, or other house of deposit. The drawer undertakes that the bank will pay to the payee or holder the sum named in the check ; and the payee having received the check the drawer is not liable to pay it, if he drew it in good faith, until the holder has demanded and failed to obtain payment from the bank upon which it was drawn. If the bank refuses to pay, the holder, as-a general rule, has no right of action against it, but must look to the drawer for payment. But the drawer may have his action against the bank, for refusing to honor his cheek; but not until the same has been presented and payment refused.
It is consequently well settled, as a general rule, that the holder of a check has no recourse upon the drawer until the check has been presented to the bank and payment refused. Murray v. Judah, 6 Cow. R. 484 ; 8 Kent Com. p. 75, 4th ed. It is held that a check unless dishonored is payment. Byles on Bills, marg. p. 23, top 100. And that demand and refusal before suit is brought, is an essential preliminary to an action against the drawer. Murray v. Judah, 6 Cow. R. 484 ; Harker v. Anderson, 21 Wend. R. 372; Sherman v. Comstock, 2 McLean R. 19 ; Daniels v. Kyle, 5 Georgia R. 245 ; Case v. Morris, 7 Casey R. 100. And it is held that the same rules which are established in relation to bills of exchange, as to presentment and notice, in general apply to checks. Byles on Bills, top p. 85, marg. 13, 14, note 1, and top p. 92 and n. 1. The *743 same diligence is required as to presentment and notice. Mr. Parsons says, a check must be presented within reasonable time in order to charge the drawer or indorser, in case of failure of the drawee. The fact that it is presumed to be drawn against deposited funds, makes it of even greater importance than in the case of a bill, that a check should be presented, and that the drawer should be notified of the non-payment, and that he and any indorser should be discharged by neglect of notice. 2 Pars, on bills p. 71.
In Gough v. Staats, 13 Wend. R. 549, it was held that greater diligence is necessary, in presenting checks for payment, than is required in relation to bills of exchange. But the better opinion is, that there is no good reason for the distinction. The fact that one instrument is drawn upon a bank, and the other upon an individual, can make no difference in principle, concerning the duty of the holder. What will be due diligence in the one ca'se will be due diligence in the other. Byles on Bills, marg. p. 19, note 1.
But they differ in respect to the legal consequences of negligence and delay in presentment and notice. In the case of a bill of exchange, it is an absolute and unqualified discharge of the drawer. In the case of a check, if presentment is made and payment refused, and notice given any time before the failure of the bank, the drawer is not discharged if it be shown that he is not prejudiced by the delay ; and if prejudiced he is discharged only pro tanto. Bell v. Alexander, 21 Gratt. 1. But presentment and refusal before suit brought, are, as a general rule, pre-requisite to the right of action by the holder to charge the drawer.
Mr. Smith, in his valuable work on Mercantile law, says, It has been held that if the drawer has no assets in the drawee’s hands, nor any reason to expect that the bill will be paid, a presentment is, for the purpose of charging him, unnecessary. But nothing short of this *744 will do ; not even a declaration by a drawee, that be will not pay it. Smith’s Mercantile law, p. 812,, and cases cited. And again, on p. 332, he says, if the drawer has any reasonable ground to expect that the bill will be paid, he is entitled to notice.
In this case the drawer had more than double the amount of the check to his credit in the bank when it was drawn. He had reduced his credit on the 7th of March, when the bank was removed to Farmville ; but had still to his credit more than was required to pay the check, if it had been presented. But on the 1st of July his credits had been further reduced, so that they would have fallen short of paying the check, i£ it had then been presented, something over $300. And it is contended for the plaintiff, that he was thereby excused for failing to present the check, and give notice to the drawer.
In Hammond v. Dufrene, and Thackay v. Blackett, 3 Campb. R. 145 and 163, Lord Elden held the drawer entitled to strict notice. Mr. J. Story, in commenting on these cases in the matter of Brown, says, “ it was upon the ground that there was an open account between the parties, and therefore the drawer could not necessarily have been aware beforehand, that either of the bills would not be discharged ; so that the case was put upon the clear ground that the drawer had a right to draw, and a right to believe that his bills would be honored. Indeed, in the case of a fluctuating balance between the parties, this may well constitute a ground upon which, without knowing the exact state of the balance, the drawer may reasonably draw. And this, he says, was the very ground upon which the doctrine was put in the case of Orr v. Maginnis, 7 East’s R. 359, where the court thought in the case of a shifting balance, notice was necessary; because the drawer could not or might not know, that he was drawing without any right to draw. The same doctrine, he says, was upheld in *745 Legge v. Thorpe, 12 East R. 171, and was there expounded upon the principles which I have stated.”
Their How to apply these principles. The drawers in this case had an open account with the bank. They were large dealers and esteemed good customers. Their deposits from January to March 1862, amounted to $20,000, some in bank notes and some in Confederate money. And what was the extent of their deposits afterwards does not appear. But it does appear that in October 1862, they made a deposit of $1,200. They had an open account with the bank and the balance was fluctuating. And the drawers could not, or might not, know that they were overchecking. The cashier testifies that it often occurred through the inadvertence of dealers, and that if this check had been presented it would no doubt have been paid upon the credit of the drawers. We conclude, therefore, that upon this ground the holder of the check was not excused for its non-presentment.
But it is further contended for the plaintiff, that he was excused on account of his inability, by reason of a broken limb, to go to Winchester to present the check for payment. There was no necessity for him to have gone in person. He might have sent it by post, as he did the letter acknowledging its receipt.
Another ground relied on was the state of the country, being occupied by the public enemy. There appears to have been nothing in the condition of the country to have prevented the presentment to the bank at Winchester before its removal. And due diligence required that it should have been presented before the removal of the bank. The check was sent by mail to the plaintiff on the 11th of February 1862, and he acknowledged the receipt of it “by due course of mail,” by letter dated' February 17th. He probably received it on the 12th or 18th of February. And the bank was not removed until the 7th of March. And it is proved that the mail *746 stage ran regularly between Winchester and the plaintiff’s residence (which was about twenty-six miles from ■ Winchester on the stage road), until the 6th or 7th of ■ March. The same mail which carried his letter acknowledging the receipt of the check through Winchester to the defendants, might have safely carried the check to Winchester' to be presented to the bank for payment. And if it had been, it would have been undoubtedly paid. And no presentment being afterwards made until the bank had become insolvent, it would seem that nothing more is necessary to negative the plaintiff’s right of action to charge the drawers. The . presentment after the bank had failed was a vain and nugatory act, and was of no value for any purpose.
There is no evidence that the plaintiff made any effort to draw the money from the bank after its removal to Barmville. Communication, for most of the time, probably was interrupted by hostile armies. But sometimes it was open and uninterrupted. And whilst the bank was at Barmville checks from Winchester were paid at its counter. He says he did not know where the bank had removed. He surely could have ascertained by very little inquiry. Mr. J. Story thus lays down the rule: “If the acceptor has changed his place of domicil or business, presentment must be made at the new domicil or place of business, if by resonable diligence and inquiries it can be found, and it is within the same State.” Story on Bills, § 346, p. 441. But whether, in the then abnormal condition of the country, it was-the duty of the payee to follow the bank to Earmville, the court deems it unnecessary in this case to decide.. It is of opinion that if he did not intend to follow the bank to Farmville, he ought, at least, to have promptly returned the check to the drawers. He evidently did not desire to collect the money, but preferred to let it lie in bank. And having allowed it to lie in the bank for more than three years, without an effort to-collect *747 it, and without notice to the drawers that he had not collected, and did not intend to look to the bank for its payment, but looked to them, without an offer to return the check to them and request that they would pay it, the court is of opinion that he must be deemed to have made the check his own, and to have relied upon the bank for ultimate security, and that the drawers were thereby discharged. 4 Kent’s Com. p. 549, 4th edi. The court is, therefore, of opinion to affirm the judgment of the district court.
Judgment or the District court or Appeals aeeirmed.