# WHEELING.

## COMPTON *v.* GILMAN.

Submitted June 15, 1881.   Decided March 25, 1882.

1. It is a general rule that the holder of a check cannot recover against the drawer, until the check is presented for payment to the bank, and payment is refused, and notice of non-payment is given to the drawer. (p. 316.)

2. But the necessity for presentment and notice of non-payment may be waived by the representations and conduct of the drawer. What representations and conduct are sufficient to constitute such waiver are questions of fact to be determined under the circumstances of each case. (p. 316.)

3. The failure to present a check to the bank for payment promptly does not in itself release the drawer from liability. His liability continues, unless it appears that he has suffered loss or damage by reason of the failure to present the check promptly for payment. (p. 317.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood, rendered on the 9th day of April,

1878, in a cause in said court then pending, wherein Benjamin S. Compton was plaintiff, and J. C. Gilman, William Burk and C. Coville were defendants, allowed upon the petition of said Compton.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court.

*George Loomis* for appellant cited the following authorities: 5 W. Va, 377 ; 21 Gratt. 182; 2 Dan. Neg. notes 543; 5 W. Va. 156 ; 21 Wend. 372; Chitt. on Bills (10th Am. ed.) 511–515.

*David D. Johnson* for appellee, cited the following authorities: Adams Eq. pp. 379, 381 ; 6 Cranch 9; Code ch. 129 ; Acts 1877 ch. 96 ; 3 Johns. Chy. 513 ; Acts 1875 p. 459.

PATTON, JUDGE, announced the opinion of the Court :

B. S. Compton brought a suit in equity with foreign attachment against C. Coville to recover the amount of a certain draft held by him and accepted by Coville. Coville answered alleging payment of the draft and claiming, that Compton was indebted to him by reason of a check for $1,000.00 on the Toledo Savings Bank of Ohio, and praying for affirmative relief under section 35, chapter 125 of the Code of 1868. It appeared, that the draft had been paid by Coville; and the circuit Court of Wood county, in which the cause was pending, decreed in favor of Coville for the amount of said check with interest from its date. From this decree Compton appealed to this Court. It appears from the evidence, that Compton was indebted to Coville in the sum of $6,730.00, and that in payment of that sum he gave to Coville various checks upon the Toledo bank and other banks in full of the sum due on said indebtedness. Amongst other checks he gave one on the Toledo Savings Bank for $2,800.00, dated November 30, 1870. There is no dispute about the fact, that Coville remitted this check to that bank endorsed, and drew out of that institution $1,800.00 of said amount; and the con-

troversy in this case is as to what became of the balance of that amount—$1,000.00, whether it was drawn by Coville, or whether it was drawn by Compton. If drawn by Coville the decree of the circuit court of Wood county is erroneous; but if drawn by Compton, the decree is right.

The evidence shows, that Coville and Compton were friends and had mutual business-relations and large business-transactions; that after Compton had given the said check, he wrote to Coville, under date of "Monroe, March 12, 1870," that there was a certain quantity of oil, (they were engaged in the oil business) which he thought he could buy; and if Coville would leave the amount of the check for his benefit in the Toledo bank to be used in that purchase, he would allow him twelve per cent. payable in advance. In pursuance of this proposition on the 22d of December, 1870, the parties met and exchanged checks, Coville giving to Compton his check on the Toledo Bank for $1,000.00 and Compton in exchange for that check giving to Coville his check for a similar sum. Compton claims, that, it being determined a few days after this transaction, that the check to him would not be needed, he and Coville met, and it was agreed, that these checks should be destroyed, and that in fact he destroyed Coville's check to him. Coville on the contrary claims, that Compton drew the money on his check, and that he still retained Compton's check. This transaction occurred in December 1870. The suit was instituted in September 1875.

The books of the Toledo Savings Bank, while they show, that the whole amount of the $2,800.00 was drawn out of the bank, do not show, who drew the money. The checks themselves show, that Coville drew $1,800.00, but whether Compton drew the balance—$1,000.00—on Coville's check, or Coville himself drew that sum, the books do not show. When Coville received Compton's check for $2,800.00, he endorsed it and sent it to the bank. Instead of the cashier charging Compton with that amount and crediting Coville with a like sum, he simply retained the check without making any entry on the books of the concern ; and when Coville checked upon the bank he would for the amount of the check fill up a check and sign Compton's name to it and charge Compton with so much money drawn out of bank. While the books therefore

do not show, how this money was drawn out of the bank, the checks themselves would; but while two checks showing, that Coville drew out of the bank on his own checks $1,800.00 are produced in evidence, the third check for $1,000.00 is not produced. That check would if produced settle this controversy.

It seems, that after the institution of this suit, the assistant cashier of the bank, through whom, so far as the bank was concerned, all this matter was transacted, and who was also the financial agent of Compton, obtained at Compton's solicitation the checks, by which this fund was drawn from the bank, and delivered them to the attorney of Compton in Toledo, who transmitted them to Compton's attorney in West Virginia. Coville with a view to the assertion of his claim in this suit wrote to the bank for the checks and threatened suit, if they were not produced. The bank then called on the parties, to whom the checks had been delivered, for their return. Two of them, about which there is no dispute, were returned; the other, if returned, about which the evidence is not satisfactory, has been misplaced and cannot be produced. It is a singular fact, that while these checks in the light of the present litigation were in the possession of the financial agent of Compton, obtained by him with reference to the litigation, turned over to his attorney in Toledo, and transmitted by him to the attorney in West Virginia, yet, although the deposition of this agent is taken as to what the bank books show as to this money, and the deposition of the attorney in Toledo as to the return of these checks to the bank was taken, neither of them undertakes to say, what the missing check showed as to who received the amount of it. The attorney in West Virginia was not examined at all on the subject. It is conceded, that a check was given by Compton to Coville for $2,800.00; that a short time thereafter, Coville gave to Compton his check for $1,000.00, and at the same time Compton gave his check to Coville for the same sum and in consideration of the other check. It is obvious, that in this arrangement it was intended, that Compton should have the benefit of that sum of money, and that while he at the same time gave his check to Coville, he was not expected to use it by presenting it to the bank as checks are usually presented

for payment; but that he was to hold the check merely as evidence of Compton's liability to him for that sum, to be presented or not as the circumstances of the future might determine. Upon any other theory the exchange of checks would be useless, as the presentation of both would put the parties just where they were before the exchange of checks took place.

Compton's pretension, that he destroyed Coville's check is not sustained by any fact in the case. Coville still retained his check. A business-man would have required its surrender or cancellation. The check, by which the disputed $1,000.00 was drawn out of bank, is traced to the possession of Compton's agents and attorneys and disappears, whether designedly or accidentally, it is not necessary to determine. His agent, the Toledo bank, kept its books so loosely, that they do not show, who drew this money. All these facts and others which could be mentioned throw the burden, to say the least of it, upon Compton to account for this money; and he has failed to do so.

But it is claimed, that there is no evidence of a presentation of this check to the bank for payment and notice of non-payment to Compton, and that therefore Coville is not entitled to recover upon the check. It is true, that it is a general rule, that the holder of a check has no recourse upon the drawer, until it has been presented to the bank and payment refused, and such presentment and refusal are essential preliminaries to an action against him. The fact, that the check is presumed to be drawn against deposited funds, makes it of great importance, that a check should be presented, and that the drawer should be notified of non-payment, in order that he may speedily enquire into the causes of refusal and be placed in a position to secure his funds, which are deposited in the bank. 2 Daniel Negotiable Instruments § 1586 ; 2 Parson's Notes and Bills 71 ; `Harker v. Anderson, 21 Wend. 372 ; Cox v. Boone, 8 W. Va. 510; Purcell v. Allemong, 22 Gratt. 739. But while it is settled, that a check should be presented promptly to the bank for payment, otherwise the drawer will not be responsible, and no action can be maintained against him upon the check, it is equally well settled, that the necessity for such presentment may be waived by the representa-

tions and conduct of the drawer. What representation and conduct are sufficient to dispense with the prompt presentation of the check are matters of fact, to be determined under the circumstances of each case. 2 Parson's Notes and Bills 71, 72; *Devendorf* v. *West Virginia Oil Co.*, 17 W. Va. 174; *Commercial Bank* v. *Hughes*, 17 Wend. 94; *Franklin* v. *Vanderpool*, 1 Hall 78; *Cox* v. *Boone*, 8 W. Va. 510.

It has been held, that unless a check is promptly presented for payment at the bank, the drawer is discharged from liability, whether any injury has been sustained by him by reason of the failure to present or not. *Harker* v. *Anderson*, 21 Wend. 372; 2 Parsons' Notes & Bills 74; *Ford & Burdett* v. *McClung*, 5 West Va. 156. But I think it may be regarded as settled now, that the drawer of a check is not released simply by the failure to present the check at the bank promptly. He must show, that by such failure he was injured or suffered loss. 2 Parsons' Notes & Bills 74. *Cox* v. *Boone*, 8 West Va. 510; *Bell* v. *Alexander*, 21 Grat. 1; 2 Daniel on Negotiable Instruments, § 1,587. It is not pretended in this case, that Coville's failure to present the check occasioned any loss or damage to Compton. The only question is, whether the delay in itself discharged Compton from liability on the check. Upon principle and authority such delay did not discharge him. But it raises a strong presumption, that in some way the amount originally due by that check was satisfied, which presumption would be conclusive under ordinary circumstances; but in this case it is overcome by the facts before referred to, amongst which is the letter of Compton proposing to pay twelve per cent for the use of this money and the exchange of checks under the circumstances, the very nature of which exchange constituted a valid excuse for not presenting the check for payment and accounts for the delay.

I am of opinion to affirm the decree of the court below with costs to the appellee and damages according to law.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.