# CHARLESTON.

WHITE *et als.* v. COUNTY COURT.

Submitted September 28, 1915.   Decided October 12, 1915.

1.  COUNTIES—*County Bond Issue—Submission to Vote—Subsequent Alteration of Road.*

    Where a county court submits to a vote of the people a county bond issue, to permanently improve and make necessary changes in their location, certain county roads, described in its order of submission, and after the bonds are voted, adopts certain routes, where changes in the old roads are necessary to improve their grades, it

may, thereafter, lawfully make such further changes in the routes previously adopted as will, in its judgment, be for the best interest of the public, provided such alterations are consistent with the description of the roads, given in the order submitting to a vote the bond issue. (p. 730).

2. Same— *Bond Issue — Order Submitted — Construction — "To" — "From."*

Words must be given a reasonable construction according to the subject matter in relation to which they are employed; and the prepositions "to" and "from", used in describing a public road as leading from the city of P. to the city of A., are not intended to describe the road as terminating at the corporate limits of said cities but as extending within them. (p. 731).

3. Highways—*Improvement of Streets—Expenditure of County Funds —Proceeds of Bond Issue.*

The county court may lawfully expend, on a public road within an incorporated city in its county, a portion of the county fund derived from bonds voted by the people to improve certain roads, some of which extend into such city. (p. 731).

Appeal from Circuit Court, Mercer County.

Suit by B. P. White and others against the County Court of Mercer County and others. From a refusal to dissolve an injunction, defendants appeal.

*Reversed, and injunction dissolved.*

*J. A. Meadows, Sanders, Crockett & Kee, H. E. De Jarnette* and *Hartley Sanders,* for appellants.

*John R. Pendleton* and *Harold A. Ritz,* for appellees.

Williams, Judge :

The County Court of Mercer county has appealed from an order of the circuit court of said county, refusing to dissolve an injunction theretofore awarded, on a bill filed by B. P. White and others on behalf of themselves and others similarly situated, enjoining it from spending, within the city limits of Princeton, any portion of the funds derived from the sale of certain county bonds issued for the purpose of making permanent improvements of certain public roads in the county. Some of plaintiffs live within, and others without the city of Princeton.

Pursuant to a vote of the people of the county, at a special

election, regularly called and held for the purpose of determining the question of a bond issue, the county court had issued bonds to the amount of $500,000, to be applied to improving permanently certain roads in said county, and making necessary changes in their location. Among others, specified in the order submitting the question to a vote, were the roads leading "from Bluefield to Princeton; and the road from Princeton to Athens," which were to be permanently improved by macadamizing, or by some other process of no less merit. Finding thereafter that that sum of money was not sufficient to complete all the road improvements which it had undertaken, the court submitted to the voters the question of bonding the county for the additional sum of $350,000, which likewise carried. After the first bond issue had been voted, the county court, upon the report of viewers previously appointed, adopted, as the location for a portion of the road from Princeton to Athens, a route known as the "car line route," or the "overhead bridge route". The bridge crosses the yard and tracks of the Virginian Railway Company, within the city limits of Princeton. After the second bond issue had been voted, a large number of citizens petitioned the county court to change the location from the "overhead bridge" route to what is called the "low grade route." The difference in distance, caused by the change, is about 1,200 feet in favor of the former, and the difference in grade is in favor of the latter route, it being nowhere as much as 1%, whereas the present grade on the former route is 7%, and the best grade that can be secured on it is 4-1/2%, and to obtain which will likely require the expenditure of as much money as to make the road on the low grade route. The building of the overhead bridge road, so as to connect with the bridge as it now is, will cost about $6,000 less than to build the low grade route. So that, leaving out of account the cost of paving and the future maintenance of the bridge, that route will cost less to construct than the other. The low grade route passes under the railroad tracks some distance from the overhead bridge and requires the building of some road within the city limits.

The order appealed from refused dissolution of an injunction restraining the county court, its agents and servants

"from using, or in any way diverting or spending, any part of the proceeds of the sale of said bonds of the two bond issues for the purpose of constructing the road on said lower grade route within the said city of Princeton."

Counsel for appellees contend that the county court can not lawfully spend any part of the money derived from the bond issues in constructing roads within the city limits; that such application of the fund was not contemplated by the vote taken on the bond issue; that the law imposes the duty and burden upon the city to make its own streets; and that the prepositions "to" and "from", used in describing the road leading from Bluefield to Princeton and from Princeton to Athens, are exclusive. They further insist that the county court could not lawfully make the alteration in the location of the road, after the first bond issue had been voted and after it had adopted the "overhead bridge" route.

The particular piece of road in question is a part of one general system of thoroughfares in the county, to be permanently improved, and it may be inferred from the fact that the road from Princeton to Athens is to be macadamized, that it is an important part of that general system. It is no violation of the trust imposed by the people upon the county court, by voting the bonds, to spend a portion of the fund derived therefrom in building the road within the city limits of Princeton, if such expenditure is necessary to complete the permanent road from Bluefield to Athens, which is one continuous highway. In making the alteration the county court violates no condition, either express or implied, of the second bond issue. On the contrary, in submitting the second bond issue to a vote, it reserved the right to make changes. Its order expressly stated that one of the purposes was to raise additional funds with which to complete the construction of the roads which had been begun pursuant to the previous bond issue, "together with any changes in their locations as heretofore established." It had the right to make the alteration. It is certainly an important matter to locate all parts of the road on a good grade, and one evident purpose of the change was to avoid a 7% grade at the overhead bridge. The change made the road throughout its entire length practically level. Perhaps another object was to get rid of the expense

of maintaining an overhead bridge across the railroad company's yards for all future time. If these were the objects to be accomplished, the county court has shown commendable wisdom.

"To" and "from" are not necessarily exclusive terms. They must be given a reasonable construction according to the subject matter. They are sometimes taken inclusively. A road described as leading to a city is not generally understood as stopping at the corporate line, but rather as extending into the city. If a person says he is going to New York City, he means that he intends to go into the city, not that he will stop at the boundary line. An act incorporating a railroad company, to run from one city to another, does not require it to stop at the corporate limits of the city. *Central of Ga. Ry. Co.* v. *Union Springs & Northern Ry. Co.*, 144 Ala. 639; *Houghton St. Ry.* v. *Laurium Com. Council*, 135 Mich. 614; *Farmers' Turnpike* v. *Coventry*, 10 Johns. 389; and *Union Pacific R. R. Co.* v. *Hall*, 91 U. S. 343, 348.

Authority to make and improve public highways within the corporate limits of a city, and to expend the county funds therefor, is impliedly given by Sec. 24, Ch. 52, Acts 1909, Ser. Sec. 1791, Code 1913, which reads as follows:

"In like manner the county court of any county, may contract and pay for making, improving and keeping in order, the whole or any part of any county road within the county. They may permanently improve by the use of asphaltum, brick, stone, block or by macadamizing, or other process of equal merit, the main roads within their county and may contract therefor with any contractor for the use of any of these foregoing systems, and take bond and security in a penalty equal to the estimated cost of the work in question, from any such contractor for the faithful performance of his contract. They may pay for the work done under such contract, in whole or in part, out of the county treasury by special levy to be laid in the manner and form as provided by section six of chapter nine of the acts of the legislature of the special session of one thousand nine hundred and eight, or by issuing bonds or other evidences of debt for the same."

The terms "within the county", as used in the above statute, include all municipalities in the county, there being

nothing to indicate a contrary intention. The inhabitants of Princeton, together with all other citizens of the county, are taxed to pay the bonds. It is, therefore, certainly not inequitable that some of the fund should be spent on roads within the city.

Section 24, Art. VIII of the Constitution, gives the county courts jurisdiction, under such regulation as may be prescribed by law, of the internal police and fiscal affairs of their respective counties, "including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies;" and the only regulation, apparently, the legislature has prescribed for the exercise of the power to construct a public road within the limits of an incorporated city, town, or village, is, that the county court must first obtain the consent of the owners of lots over which the road may run, as provided by Sec. 12, Ch. 52, Acts 1909, Ser. Sec. 1779, Code 1913. In this case the consent of the lot owners, to be affected, has been obtained, without cost to the county court. The statute last cited is identical with Sec. 33, Ch. 43, Code 1906, except that the last named act required the consent of the city council, whereas the first named, requires only the consent of the lot owners. While it would seem that the later statute repeals the earlier, it is not necessary to decide that question, because the city council has here consented.

The Virginian Railway Company has granted to the city of Princeton the right to construct a street across, and under its tracks, conforming to the "low grade" route adopted by the county court, forty-eight feet in width, reserving to itself, however, the right to place abutments or piers in said street, to support its tracks overhead, and leaving not less than two openings, each to have a horizontal clearance of at least twelve feet. It is contended that the road will be thereby reduced to less than the lawful width. The statute does not contemplate that the roadbed shall be forty feet wide, but only that the right of way shall be of that width. That requirement is evidently for the purpose of providing material with which to construct the road, and foundation for fills and retaining walls. Two twelve foot tracks, separated only by an abut-

ment, are sufficient for the public need, and shows a compliance with the law.

It is contended that the change to the "low grade" route will necessitate the building of two bridges, each having a span of not less than ten to fifteen feet in length, and that the county court has no right to divert any portion of the fund derived from the bond issues to the building of bridges. It does not appear that it is the county court's purpose to so use any part of that fund, and it is, therefore, unnecessary to decide whether it could lawfully do so or not. It unquestionably has the right to provide other funds for the building of bridges.

The decree will be reversed and the injunction dissolved.

*Reversed, and injunction dissolved.*