# CHARLESTON.

### BROWN v. COUNTY COURT.

Submitted August 11, 1916.   Decided September 19, 1916.

1.  HIGHWAYS—*Improvement—Materials—Submission to Popular Vote.*
    The county court is without authority to substitute one type of road construction material not authorized by an election had pursuant to §5, ch. 8, acts 2nd Ex. Sess. 1915 (Barnes' Code 1916, ch. 43, §56a25a), for another type of material expressly submitted to the qualified voters of the district affected and approved by them at an election held and conducted therein, under said statute, for that purpose. (p. 645).

2.  SAME—*Improvement—Submission to Popular Vote.*
    When at an election so held and conducted the voters authorize a bond issue for the improvement of a road between certain designated points connected by two roads virtually of the same general character and length, neither of them being specifically mentioned in the petition or order of submission, the county court is vested with ample authority to determine which road it will undertake to improve by the expenditure of the proceeds of such authorized bond issue. (p. 646).

3.  STATUTES—*Repeal—Implication.*
    When two statutes of different dates purport to cover the whole of the same subject matter, the later one, when plainly showing it

was intended to have that effect, works a repeal of the other by implication, and becomes a substitutè therefor, although it does not purpore to amend and re-enact the prior statute but repeals all acts inconsistent therewith.   (p. 646).

Appeal from Circuit Court, Preston County.

Suit by Eugene Brown against the County Court of Preston County. From a decree sustaining a demurrer to the bill, complainant appeals.

*Reversed, demurrer overruled, and cause remanded.*

L. F. *Everhart* and S. P. *Mitchell,* for appellant.

A. G. *Hughes,* for appellee.

LYNCH, JUDGE:

From a decree sustaining defendant's demurrer to and dismissing the bill, alleging irregularities in the submission of a proposed bond issue and tax levy upon the real and personal property of Portland district, Preston county, for the improvement of public roads therein, upon the petition of the requisite number of taxpayers within the district, and praying an injunction inhibiting defendant from further proceedings in the matter of such improvement, the plaintiff Brown obtained this appeal.

The vital errors, if errors at all, relate to the manner of the submission of the proposed bond issue. It is contended the notice of the election should have been published in two newspapers of opposite politics and general circulation within the territory affected. There are two statutes applicable to such proceedings: §7, ch. 9, acts 1908, relied on by plaintiff; and §5, ch. 8, acts 2nd Ex. Sess. 1915, relied on by defendant. The first statute requires publication in the manner urged by appellant; the second, "in one or more newspapers of general circulation if published within the county or district affected", and with which defendant complied. Although the later act does not purport to amend and re-enact the prior one, it does so by implication. It embraces the same subject matter, and contains the usual general provision that all acts and parts of acts inconsistent therewith are thereby repealed. Hence, the last statute controls. Besides, it does not appear

from any pleading that there is more than one newspaper published or of general circulation in Portland district, as required in section 5.

The second irregularity urged is that neither the petition seeking the election, nor the order of the county court submitting the matter to the voters of the district, definitely state the amount of the proposed indebtedness or levy. However, both furnish the data from which such amount may readily be ascertained. The petition fixed, as the basis of the indebtedness proposed, five per cent of the total assessed valuation of the taxable property in the district for the last preceding fiscal year. The aggregate property values the county court, by its order of submission, ascertained to be, and which the notices published and posted show was, $5,646,071. This total, and the rate prescribed and fixed, served as the bases from which to compute the amount to be authorized for collection and disbursement for the purposes designated. From them any intelligent voter readily could by calculation determine the extent of the liability sought to be imposed upon the property of his district for road improvement purposes. Hence, it can not reasonably be said sufficient information upon the matter submitted for decision was not furnished to him. What may be ascertained with certainty by computation from data provided and available is deemed certain and definite and satisfies the legal requirement pertaining to such issues.

Again, it is claimed the petition and the order of submission indefinitely described one of the roads to be improved as beginning at the Maryland line and extending to and through the town of Terra Alta, thence to and through the town of Albright to the Pleasant district line, and, as two roads opened and used by the public exist between Terra Alta and Albright, the distance between the two points being three miles less by one route than by the other, the voters intended and it was the duty of the county court to select for improvement the shorter of the two highways. In the absence of a definite identification of the road contemplated, the county court was not deprived of the right to exercise the discretion vested in it by law to determine which of the two roads it would im-

prove. Such deprivation, to be effectual, must clearly appear. There is in this instance no manifestation of an attempt to circumscribe or restrict this statutory right of selection. On the contrary, an intention is apparent to leave its exercise by the proper tribunal free and unfettered by any limitation whatever. The petitioners and voters evidently knew the existence of the two roads between the points named. They also knew both highways were not, and only one of them was, intended to be benefitted by the contemplated improvement. Some one must supply the omission, that one necessarily being the tribunal to that end empowered by statute. This objection, therefore, is untenable.

The fourth and last irregularity concerns the character of the material to be used in the improvement of the roads specified. While the language used may perhaps engender some doubt when cursorily read, a careful examination will lead to the conclusion that the voters clearly understood and intended to consent to the use of concrete in the reconstruction of such roads. The language employed by the petitioners, so far as now pertinent, and carried into the order of the county court, prays that "the proceeds arising from the sale of the bonds shall be used by the county court in relocating, grading and building or in the permanent improvement of the following named roads in such manner as is prescribed by law, the roads to be improved by the proceeds of said bonds being as follows, towit: "A fifteen foot concrete road beginning at the Maryland line just west of Hutton and extending to and through the town of Terra Alta and thence to and through the town of Albright to the Pleasant district line; a fourteen foot concrete road beginning at the Union district line on the Aurora pike," etc. It is contended that the word "concrete" is a part of the description of the road, and not a specification of the material to be used. But none of the roads were concrete roads. The evident intent of the voters was to make them such. In its order calling the election, the county court provided that the proceeds derived from the sale of the bonds should be used in making permanent improvements on the roads specified in the petition and to the extent therein set forth, "by the use of concrete and such other materials as are

required to complete the work in the manner prescribed by law.'' It directed the vote to be taken upon that issue, making due provision for the election, the assessment of the taxes, and the disposition of the proceeds to be derived therefrom. The voters doubtless understood, when voting their consent so to be taxed, that the material to be used in making the public improvements authorized by them was concrete and such other material as was necessary to build concrete roads. They expressed a willingness to be taxed for the construction of highways out of that character of road building material, and none other. It can not reasonably be said they contemplated the substitution therefor of water-bound macadam, although perhaps less expensive than that to which they assented. Doubtless the petitioners had in mind the use of the same material, as evidently did the county court when granting their prayer and submitting the matter to a popular vote. If so, and of that there can be no doubt, the only road construction material that can be used is the material authorized by them. Assent was not given to the use of any material other than that so specified and its constituent elements. That is the only reasonable and legitimate conclusion or construction to be placed upon the proposition to which the voters gave their consent. By that construction the county court is bound, as well as by its approval of the prayer of the petition asking for the public improvements. This construction is strengthened and supported by the further consideration that the county court advertised for bids for the construction of concrete roads.

After the advertisement for and receipt of such bids, the county court ascertained that the funds so authorized were insufficient for that purpose. With this information before it, and no doubt moved by a desire to better road conditions in Portland district, the county court entered an order, a copy of which is exhibited with the bill, which, after reciting the result of the bidding and the inadequacy of the funds as ascertained therefrom, found that the proceeds from the authorized bond issue was sufficient to rebuild and improve such roads by the use of water-bound macadam; that the water-bound macadam method of construction was susceptible of

changes such as would make possible the application of it within the limits of the funds available, and was a form of construction authorized by law and mentioned by the petitioners in the petition calling for the election. The court thereupon ordered that the feasibility and propriety of the macadam construction be considered, and that the question of awarding contracts therefor be postponed for consideration until the next regular term of that court. It was further ordered that additional bids be taken and considered at that time. From the language of this order, the terms of which are certain and unequivocal, it is evident the county court contemplated the use of a material in the construction of the roads different from that specified in the petition and the order of submission to the voters.

An attempt is made, which we think is not authorized by the language relied on, to justify the action of the county court in the change of material, by the phrase "in such manner as is prescribed by law", contained in the petition and the order of the county court above quoted. This phrase, coupled as it is with a specification of the material approved by the voters, can not reasonably be construed in justification of the substitution of water-bound macadam in lieu of "concrete *and such other materials as are required to complete the work in the manner prescribed by law*". General terms can not be permitted to operate adversely to definite and well defined terms. It is not permissible to assume or conclude that the phrase so injected into the petition and order was understood to authorize the issuance of bonds for any purpose other than that particularly specified. Such an assumption is not warranted. It is wholly inconsistent with the explicit language referred to.

In addition to the other matters discussed and decided, the appellant complains of the order of the circuit court sustaining the demurrer and dismissing the bill because of alleged insufficiency. The bill avers that the county court "contemplates" the use of water-bound macadam in effecting the proposed improvements. "Contemplate" is a word of comprehensive meaning. As defined by the Standard Dictionary, it means "to consider with a view of accomplishing; intend;

plan''. The bill substantially charges that, notwithstanding the voters gave their consent for the construction of concrete roads, the county court intends to use a wholly different material. This, we have seen, it can not do, but is limited to the use of the material which the voters specially authorized. These averments, coupled with others already noted, render the bill sufficient on demurrer. This being so, it is clear the action of the circuit court in sustaining the demurrer and dismissing the bill was erroneous.

For this reason, the decree of the court must be reversed, the demurrer overruled, and the cause remanded. Such will be the order entered here.

*Reversed, demurrer overruled and cause remanded.*