# CHARLESTON.

LAWSON et als. v. COUNTY COURT OF KANAWHA COUNTY.

Submitted May 8, 1917.    Decided May 22, 1917.

1. COUNTIES—*Indebtedness—Constitutional Provisions.*

In the formulation and adoption of the Constitution of this state, the people, marking the distinction between public expenses and public debts, vested ultimate and complete discretion as to the creation of county, district and municipal indebtedness and also as to the purposes for which the same shall be incurred, in the people of the respective fiscal sub-divisions of the state, by sec. 8 of Art. X of said constitution, inhibiting the creation of such debts in excess of amounts ascertainable by a rule therein prescribed; requiring provision for payment of interest thereon annually and discharge of the principal within a specified period, when such indebtedness is created; and also inhibiting the creation of any such debt in any amount, without the assent of the people expressed in a certain and definite manner.    (p. 619).

2. SAME—*Indebtedness—Conditions Fixed by Voters—Constitutional Provisions.*

Within the limits fixed by law, the power and discretion of county courts, boards of education and municipal authorities, as to funds they legally provide themselves with for public expenses and improvements, by taxation, are supreme and uncontrollable by citizens and tax-payers, and, in the case of county courts, such funds are within the broad fiscal jurisdiction conferred upon them by sec. 24 of Art. VIII of the Constitution; but funds legally provided for public improvements and other lawful purposes and placed in their hands, by means of the creation of public debts, are popular grants of money, made upon the conditions prescribed in the propositions for creation of such debts, submitted to the people and assented to by them, in the manner prescribed by said sec. 8 of Art. X of the Constitution.    (p. 619).

3. SAME—*Public Improvements—Conditions of Vote—Constitutional Provisions.*

The limitation in said section 8 of Art. X, inhibiting creation of indebtedness, without having first submitted "all questions connected with the same" to a vote of the people and obtained their assent thereto by three-fifths of all the votes cast for and against the proposition, authorizes expression and enforcement of the popular will, not only as to the character, amount and purpose of the proposed debt, but also as to the character of any public improvement for the making of which money is raised by

a bond issue, and the administration and application of the fund so raised therefor; and, if measures, not inconsistent with law nor transgressive of any principle of public policy, limiting the discretion and powers of a county court, board of education or municipal authorities, seeking assent to a bond issue, as to any of such matters, or providing for representation by the tax-payers' in the administration and use of such money, are incorporated in the order of submission, they are valid and binding, as conditions annexed to the grant of the fund, and must be observed and complied with by the contracting and disbursing public authorities to whom the law gives the fund for execution of the purpose for which it was provided. (p. 619).

4.  SAME—*Road Improvement—Expenditures—Injunction.*

A provision in an order of a county court submitting to the voters of a magisterial district, a bond issue proposition for a public road improvement, appointing an advisory committee and requiring the engineers in charge of the work, the plans and specifications and the contracts for construction of the work, to be such as are approved by such advisory committee and the State Road Engineer, is valid and binding upon the county court, and tax-payers of such district may enjoin the performance and carrying out of a contract for the work, entered into by the county court without the approval of such committee and over its protest. (p. 624).

5.  CONSTITUTIONAL LAW—*General and Special Terms.*

General and indefinite terms of one provision of a constitution, literally embracing numerous subjects, are impliedly limited and restrained by definite and specific terms of another, necessarily and inexorably withdrawing from the operation of such general terms, a subject which, but for such implied withdrawal, would be embraced and governed by them. (p. 624).

6.  SAME—*Construction.*

A subject or matter which, in the abstract, belongs to a certain class or species, jurisdiction over which is vested generally in a certain tribunal, may be impliedly detached or segregated therefrom, or assigned to a jurisdiction other than that to which such class or species is subjected in general terms, by a special constitutional or statutory provision assigning it to a different jurisdiction, or the jurisdiction over the class may be impliedly limited or qualified by conditions provided for or imposed by such special provision. (p. 618).

Appeal from Court of Common Pleas, Kanawha County.

Suit for injunction by W. A. Lawson and others against the County Court of Kanawha County and others. From a

decree overruling a motion to dissolve an injunction, defend-
ants appeal.                                    ᕁ Decree affirmed.

*McClintic, Mathews & Campbell* and *T. C. Townsend*, for
appellants.

*Price, Smith, Spilman & Clay* and *C. Beverly Broun*, for
appellees.

POFFENBARGER, JUDGE:

The principal questions raised by this appeal from a decree
overruling a motion to dissolve an injunction restraining the
County Court of Kanawha County, the R. M. Hudson Pav-
ing and Construction Company and the Atlantic Bitulithic
Company, assignee of the R. M. Hudson Paving and Con-
struction Company, from performing and carrying into exe-
cution a contract for permanent improvement of a certain
road in Loudon District of said county, involving the expen-
diture of $90,000.00 provided for the purpose by a bond
issue, on the ground of an alleged violation of a condition
upon which the bond issue was authorized by the voters of
the district, namely, that the plans, specifications and con-
tract for such improvement should be approved by an ad-
visory committee named in the order submitting the bond
issue proposition to the voters, are; (1), whether the order,
properly construed, makes approval of the contract by the
advisory committee a condition precedent to the right of the
county court to enter into a contract for the work; and (2),
if, so, whether such a provision or condition is valid. The
letting of the contract without approval of the advisory com-
mittee is admitted, although the members thereof had notice
of the letting and an opportunity to be heard on the question
of acceptance or rejection of the contract, as submitted or
proposed, and two of them were present and, speaking for the
others as well as themselves, protested against the award of
the contract. The order of submission also provided for ap-
proval of the contract by the State Road Engineer. He did
not approve the particular contract made, but did approve
plans, specifications, rules, regulations and forms of proposal

and contract under and in conformity with which the award was made and the agreement entered into.

To have made the committee merely advisory and stopped short of any limitation upon the powers of the court or regulation of the exercise of its powers, by such a provision, would not have been a vain, useless or idle arrangement. An intelligent, honest and faithful court may be greatly aided by the advice of men who are giving special attention and study to a particular matter falling within its jurisdiction. But, if the voters had power and authority to impose a positive check upon the court's action, by a requirement of the approval by the committee of proposed action, and have effectively expressed their intention to do so, their purpose cannot consistently be limited or curtailed to a more moderate and conservative one, because it might be productive of highly meritorious results or even those contemplated. As in all other cases of interpretation, the terms and provisions of the order are controlling on the question of intention.

The provision in question is an addition to what otherwise would have amounted to a complete order of submission. In other words, it follows other provisions that would have been adequate for legal ascertainment of the will of the voters as to the question submitted, including a recital, *ipsissimis verbis*, of a petition praying that the proposition be submitted and that the proceeds of the bonds "be by the said court used in the permanent improvement of such roads by the use of asphaltum, brick, stone, granite block, or by macadamizing, or other process of equal merit, and in such manner as is prescribed by law." The order declares the proceeds of the bonds, when authorized and issued, "shall be used for the purpose set out in said petition." These clauses are to be considered in connection with the provision for approval etc. by the State Road Engineer and the advisory committee, which reads as follows:

"It is further ordered by the Court that in the event the said bond election shall carry that the engineer or engineers employed upon the survey and supervision of the said roads be such as are approved by the State Road Engineer and by the State Road Bureau and the advisory committee, herein-

after provided for; and that the plans and specifications and the contract for said work be such as are approved by the State Road Engineer and by the advisory committee as hereinafter provided for; and that the work shall not be paid for until inspected and approved by said advisory committee. It is further ordered that in the event said bond issue shall carry, that the following named men, voters and freeholders in said Kanawha County, namely: W. A. Lawson, J. E. Finnegan, W. A. MacCorkle, C. H. Fink and S. H. Campbell, be and they are hereby appointed by this Court to act as an advisory committtee to this Court in all matters relating to said road improvement, including the sale of said bonds, employment of engineers, determining the kind of roads to be built and materials to be used, letting of the contracts, approval of work and materials used, etc., and the auditing and settling of accounts, said advisory committee, however, to act without pay.''

To get its true intent, meaning and purpose, it is necessary to read the order as a whole and give due effect to all of its terms and provisions, and consider the relations of the parties thereto. Ordinarily, a citizen has no place or part in the execution of the powers of a fiscal and police board. The law clothes it with certain powers within the limitations of which its will is supreme. *County Court* v. *Armstrong,* 34 W. Va. 326; *Bryant* v. *Logan,* 56 W. Va. 141, 144; *Flower* v. *Railway Co.,* 68 W. Va. 274, 278; *Armstrong* v. *County Court,* 54 W. Va. 502. This necessarily precludes the existence of any controlling or coordinate discretion in citizens and taxpayers. But, if they may lawfully impose restraint upon the powers of the court, by prescription of conditions in a bond issue, it must be assumed that words in the order of submission, having such effect, were intended so to operate. Moreover, if such a limitation or regulation is lawful, the terms of the petition, ''in such manner as is prescribed by law,'' are not inconsistent with the intent expressed by the clause providing the limitation or regulation, for, in that event, an advisory committee with power to restrain the court's action is a part of the method of procedure prescribed. by law. Obviously, therefore, the signification of these terms

of the petition, repeated in the order, depends upon what the law is. Lawfulness of the provision being assumed for the present, intention to impose the limitation is made manifest by the terms of the order. They specifically and definitely express it. They say the engineer or engineers, the plans and specifications and contract "shall be such as are approved by the State Road Engineer and the advisory committee," and "that the work shall not be paid for until inspected and approved by said advisory committee." The order names no engineer nor contractor and prescribes no materials, plans, specifications or contract. Determination thereof is left or reserved to the county court conditionally, and the condition is approval by the State Road Engineer and the advisory committee. They are to be such as are so approved. Adoption of any other would be plainly inconsistent with these terms. If they are to have effect, they must negative or deny power in the county court to adopt any other. *Expressio unius est exclusio alterius.*

A distinct analogy between the situation of the parties here concerned and interested and that of the parties to a contract is to be observed and allowed operation. The taxpayers are providing the money and causing the work to be done, through the county court, their legal agent and representative, primarily for their own benefit, in a practical sense. A public improvement in which they are peculiarly and more directly and vitally interested than anybody else, is contemplated, and they have the same motive that impels a person to desire and seek the best results of a private investment. For the $90,000.00 that must ultimately come from their pockets and others represented by them, they want the most convenient, attractive, serviceable and durable road obtainable. Their assent to the bond issue was a constitutional prerequisite. The fund is not one procurable from them in the ordinary way, or leviable by public authority, independently of their will. It is a popular grant of funds for a public purpose peculiarly affecting private interests. The contractor's interest goes only to the extent of the profit to be made on the work and the establishment or maintenance of his reputation as a road builder. The county court is not

necessarily concerned or interested beyond faithful discharge of its public duty in all of its varied enterprises of which this is only one. The peculiar; special and preponderant interest of the taxpayers may well be deemed to have impelled them to obtain the greatest possible influence in the determination of the vital matters left or reserved for future settlement, wherefore it emphatically negatives and rebuts any possible inference or presumption that the words of the order mean less than their terms import. Having granted this large sum of money, upon a condition plainly intended for promotion and conservation of interests highly important to themselves and expressed in perfectly plain terms, they cannot be deemed to have meant less than they have said.

The police and fiscal jurisdiction of county courts, vested by sec. 24 of Art VIII of the constitution, is not as broad as that claimed for them in the argument submitted for the appellants. It gives them the superintendence and administration of the internal police and fiscal affairs of their counties, but it imposes a limitation thereon. They have this power "under such regulations as may be prescribed by law." *State ex rel. Dillon* v. *County Court,* 60 W. Va. 339; *State* v. *Harden,* 62 W. Va. 313. There is no specific statutory authorization of the creation of an advisory committee to participate in the administration of a public improvement bond issue, and the limitation just referred to may be a statutory limitation. The phrases, "prescribed by law" and "provided by law", when used in constitutions, generally mean prescribed or provided by statutes. But, if the phrase in question means only statutory regulations, an inconsistent provision found elsewhere in the constitution itself may limit the powers of the county court by necessary implication. Its police and fiscal powers would not extend to any police or fiscal subject specifically assigned by the constitution to some other tribunal, or by it vested in other hands. Police and fiscal jurisdiction is not an unalterably fixed quantity. It is perfectly competent for the framers of a constitution to detach a part of what belongs to it in the abstract and give it a different character or relation. The principle just referred to applies in the judicial ascertainment and definition

of the powers of all the departments of government. The legislature is subject ·to limitations arising by necessary implication. *State* v. *McAllister,* 38 W. Va. 485; *Slack* v. *Jacobs,* 8 W. Va. 612, 637; *Bridges* v. *Shallcross,* 6 W. Va. 562. What is expressly assigned to one department of government cannot belong to another, for implications never stand against express provisions, and general and indefinite terms covering numerous subjects must always yield to inconsistent, definite and specific clauses and expressions inexorably applicable to particular subjects that would otherwise fall within the meaning of the general terms. The latter work or effect exceptions from the former by necessary implication.. In. this way, many constitutional inhibitions and restraints are imposed. "It would not be practicable, if possible, in a written constitution, to specify in detail all of its objects and purposes or the means by which they are to be carried into effect. Such prolixity in a code designed as a frame of government has never been considered necessary or desirable, therefore constitutional powers are often granted or restrained in general terms, from which implied powers and restraints necessarily arise." 8 Cyc. 741; *Page* v. *Allen,* 58 Pa. St. 338; *Com.* v. *Conyngham,* 65 Pa. St. 83; *In re Opinion of Court,* 4 N. H. 565; Story Const., sec. 424.

The importance of the subject matter of this suit, in the estimation of the framers of the constitution, impelled them to insert in that instrument a special provision respecting it. They withdrew it not only from the discretionary power of county courts and municipal corporations, but also from that of the legislature. Except for certain purposes, no state debt can be created at all, ·nor· can the legislature authorize creation of county, city, district or municipal indebtedness by their governing authorities alone. The constitution itself fixes that unalterably in the discretion and control of the people. If, in an abstract sense, it ever belonged to county police and fiscal affairs, the organic law has lodged ultimate and final power over it in the people, by sec. 8, Art. X of the Constitution, notwithstanding the power vested in the county courts by sec. 24, Art. VIII. Such debts are grants of money for public purposes, voluntarily made by the people

themselves, and not funds raised either by local taxing authorities or the legislature. Mark the vast difference between the character of funds of this class and that of others. For current expenses of the state, counties, districts and municipal corporations, the legislature and local police and fiscal authorities may raise funds by taxation, without the assent of the people. The power is absolute and unconditional. Correlatively, the authority and dominion over the fund are absolute, within the limitations prescribed by law, and the duty and responsibility of the taxing authorities are co-extensive with their dominion and power. The proceeds of a bond issue do not come in that way. Authority to raise such a fund is in the people only. They may grant it or not, as they please, and may give it for one purpose and refuse it for another. The taxing power can never raise it without their consent expressed in a certain, definite and orderly way. Recognizing the immense difference between public expenses and public debts, the framers of the constitution committed to the legislature and its subordinate agencies and instrumentalities, the controlling power and authority as to the former, and to the people of the counties, districts and municipal corporations, as to the latter.

Though concise, as constitutional provisions generally are, the terms of the declaration and guaranty of this measure of popular rule and control, are comprehensive and clear. Sec. 8, Art. X of the Constitution inhibits corporate indebtedness in excess of five per cent of the value of the taxable property of the issuing division; requires provision for collection of a direct annual tax sufficient to pay the interest annually and discharge the principal within a period of not more than thirty-four years, when a debt is created; and then provides "That no debt shall be contracted under this section, unless all questions connected with the same, shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same." The phrase, "all questions", found in this clause, has received a liberal interpretation and application at the hands of this and other courts. It is not limited to matters merely determinative of the character of the bonds, such as the purpose

of the issue, the aggregate amount, the denominations, rate of interest, dates of maturity, right of redemption and place of payment of the bonds. The extent of its operation has never been definitely determined, but it reaches the location and character of the improvement to be made. Under a bond issue for concrete road construction, specified in the order of submission, the county court cannot use the proceeds for Macadam road construction, even on the prescribed location. *Brown* v. *Preston County Court,* 90 S. E. 166. If bonds are issued for the improvement of roads definitely specified in the order of submission, the county court cannot change the locations thereof and use the proceeds in the improvement of the new roads, unless the right to do so is reserved or conferred by the order. *White* v. *Mercer County Court,* 76 W. Va. 727, 86 S. E. 765; *Brown* v. *Preston County Court,* 90 S. E. 166. The authority of the people voting bonds for public improvements to limit the powers of the county court, as to the administration and application of the proceeds, by prescription of conditions in the order of submission, is well illustrated in these two decisions. In the absence of such conditions, the court's powers are limited only by the law. If the order authorizes improvements of a road from one designated point to another, in general terms, and by the use of any lawful material, the court may make such alterations of locations, and use such materials, as it deems expedient. But, if the order limits the improvement to a certain, definite, existing road, the proceeds of the bonds cannot be used on any substituted or altered road, if the departure is a substantial or material one. In the two cases cited, the orders, as interpreted by this Court, did not limit the county court as to the matter of location, beyond the designation of termini. In *Harner* v. *Monongalia County Court,* decided contemporaneously with this case, the order is construed as limiting the improvement to the Deckers Creek Road, and the county court is enjoined from expending the proceeds of the bond issue on a new location of the greater part of that road. The limiting condition extended to the location between the termini, as well as to the points of beginning and ending. If concrete had not been specified as the material to be used,

by the order involved in *Brown* v. *Preston County Court,* any of the materials contemplated by the statute could have been used, but the specification of concrete deprived the court of the discretion it otherwise would have had to adopt Macadam, brick, asphaltum or other lawful material.

This interpretation of the constitutional provision harmonizes with that given by other courts to statutes framed in similar terms.   An ordinance requiring interest to be paid annually, framed under a statute silent as to how the interest should be paid, withheld from the city council right to make it payable semi-annually.   *Skinner* v. *Santa Rosa,* 107 Cal. 464.   The conditions of a bond issue made in aid of the construction of a railroad were substantially complied with and fulfilled.   Within the time limited by the order of submission, the road, except a bridge across the Mississippi River and the approaches, was completed, and passengers and freight were transferred at that point, and this gap was closed within a year after the date specified for completion, but the city council was enjoined from issuance of the bonds. *Hodgman* v. *C. & St. P. Railway Co.,* 20 Minn. 48.   "In an election to determine whether or not bonds shall be issued to aid the construction of a work of internal improvement, an offer in the proposition submitted to employ bona fide residents upon the work is not an offer of an unlawful inducement, and will not invalidate the bonds."   *Perkins County* v. *Graff,* 114 Fed. Rep. 441.   This decision does not say whether the condition limits the discretion of the county authorities in the expenditure of the proceeds of the bonds, but the case illustrates the extent and character of conditions imposed. "Where a proposition submitted by the city council to the voters, as required by charter, asking authority to issue certain bonds, includes the provision that such bonds are not to be sold for less than par, the council cannot, after approval by the voters of such proposition, sell the bonds for less." *Nalle* v. *City of Austin,* (Tex.) 21 S. W. 375.   In this case, the court treats the authorization of the bond issue as a contract between the city authorities, or the city, and the taxpayers.   Such definition of the relation does not vary from the elements, terms and purposes of the written and recorded

proceedings creating the status. Under the law, there can be no bond issue by a county court without the assent of the voters. The court proposes the issue, and the voters accept the proposal. Thus, they come to an agreement. Having the power to withhold their assent, the voters force the county court to incorporate in the order such conditions as are satisfactory to them. As long as conditions so obtained do not violate any positive provision of law or transgress some principle of public policy, it is impossible to perceive any ground upon which they may be declared void or ignored. The analogy between the making of this arrangement and the formation of a simple contract is very strong.

The contrary of this conclusion was advanced and applied, as a legal proposition, in *Yesler* v. *Seattle*, 1 Wash. 308. The court held the city council had no right to submit to the people, in a bond issue election, any question or condition except a mere request for authority to incur the indebtedness, unless the statute expressly provided for submission of other matters. This conclusion was expressly disapproved in *Skinner* v. *Santa Rosa*, 107 Cal. 464, the Court saying: "We cannot assent to the conclusion reached by the learned justice who wrote the opinion, nor to the argument by which it is reached. The opinion concedes that, under the constitution and laws of that state, no indebtedness can be incurred beyond a certain limit without authority expressed at an election duly held for that purpose; so that the real question to be determined is, Has that assent been given? It is quite true that in that case, as in this, particulars were inserted in the submission which the statute did not require to be submitted; but these particulars having been submitted, the vote authorizing the indebtedness to be incurred imports the particulars named as the conditions upon which that assent has been given, and hence no one can say that without these favorable conditions the result of the election would have authorized the indebtedness to be incurred. The rate of interest, the place of payment, the kind of money in which payment must be made, would influence any business man in determining whether he should incur a personal debt, and must do so when he is called upon as a voter to determine

whether he will favor his municipality incurring a debt for the payment of which, in common with others, his property is liable to taxation.   He might readily consent, upon very favorable terms being offered or proposed, and strenuously oppose it if the terms were unfavorable or were uncertain. If the terms and conditions submitted to the electors may be departed from, and such election held to authorize the issuance of bonds under other terms and conditions, a door will be opened authorizing the common council to submit a proposition so favorable as to secure beyond question a favorable vote, and then change the conditions as to rate of interest and otherwise, even without any fraudulent purpose or intent, so that, if again submitted, an overwhelming defeat would result.''  Sufficient authority, outside of our decisions, has been cited, to prove that the interpretation of the California court accords with a very decided weight and preponderance of judicial opinion.

Under the principles declared in decisions adverted to, the tax-payers might have secured by prescription in the order of submission, practically all they have indirectly reserved by means of the provision for approval by the State Road Engineer and the advisory committee. · They could have named the engineer and specified the width of the road, materials to be used, etc.   The reference of these matters to the state officer and the advisory committee gives them the character of·construction they want.   They did not specify these matters in the order, but they adopted a means by which they can be made as certain and accordant with their will, as if they had so specified them.  *Id certum est quod certum reddi potest.*  This maxim upholds a provision in a contract, for a reference of an unsettled matter to an arbitrator, and renders the contract immune from attack on the ground of indefiniteness.   An improvement of the kind in question involves expensive construction work,· and nearly all building contracts provide for a measure of delegation of authority by the owner to a stranger to the contract, generally an architect, and clothe him with a power of inspection and approval, as conditions precedent to the right of payment.   As there are three contracting parties here, in the broad sense

of the terms, the county court, the builder and the tax-payers, the rule or procedure invoking the principle of construction contracts, almost universally applied, is so varied as to make it conform to the altered conditions. The benefit of special representation on the part of the tax-payers granting the funds, can be accorded only by some such plan as that adopted in the submission order. It is fair, reasonable, just and not violative of any law.

The two decisions by the Kentucky Court of Appeals, *Floyd County* v. *Owego Bridge Co.*, 137 S. W. 237, and *O'Kelly* v. *Lockwood*, 157 S. W. 1096, relied upon in argument submitted for the appellants, are manifestly distinguishable. They seem to have involved expenditures of funds raised by ordinary taxation. Besides, the fiscal court in each case, practically delegated all the authority it had to commissioners appointed by it. They made the contracts, caused the work to be done, and, in the latter case, took the bond of the contractor. Nothing of that kind is involved here. The county court will make the contract and cause it to be performed, subject to certain conditions authorized by the constitution and the statute. Under the law, the right of the tax-payers stands upon a foundation as firm as that of the county court itself.

These principles and conclusions necessitate affirmance of the decree or order complained of.

*Affirmed.*