# CHARLESTON.

STATE *ex rel.* NED WINKLER *et al. v.* THE COUNTY COURT
OF KANAWHA COUNTY

(No. 6268)

Submitted May 2, 1928.        Decided May 19, 1928.

1. COUNTIES—*Measures Not Inconsistent With Law Limiting
   Discretion and Powers of County Court May be Annexed
   to Grant of Authority to Issue Bonds for Public Purpose.*

   Points 1, 2 and 3 of the case of *Lawson* v. *County Court,*
   80 W. Va. 612, approved and applied. (p. 593.)

   (Highways, 29 C. J. § 313.)

2. HIGHWAYS—*Provision in County Court's Order, That Com-
   mittee of Citizens Should Act With Court in Selecting
   Kind of Road Improvement, Held to Vest Such Choice in
   Committee.*

   A provision in an order of a county court submitting to the
   voters of a magisterial district a bond issue proposition for
   a public road improvement, wherein there is specified three
   different types of hard surface to be used in said road con-
   struction, and there is further incorporated the provision that
   a committee of five citizens act in conjunction with the court
   in the selection of the kind of hard surface (to be one of the
   types named in the said order) to be so used, vests the power
   of decision in such committee as to which one of the said
   three types shall be adopted. (p. 595.)

   (Highways, 29 C. J. § 313.)

3. CONTRACTS—HIGHWAYS—*Written Instrument's Meaning is
   Sought From Whole Instrument, Viewed in Light of Sub-
   ject Matter; Written Instrument's Intent Will be Given
   Effect, Though it Causes Disregarding Technical Meaning
   of Word or Phrase; Order Construed to Give Choice of
   Types of Road Improvement to Committee of Citizens, and
   to Require County Court's Action to Carry Such Decision
   Into Effect.*

   In ascertaining the true meanings of instruments in writ-
   ing, courts do not confine their attention to single words or
   phrases therein. The meaning is sought from the whole in-
   strument viewed in the light of the subject with which it
   deals. When such intent is discovered, it will be given effect,

though the result be to disregard the technical meaning of some word or phrase used in the instrument. And so, the conjunctive action of the committee and the county court intended, by the use of the phrase "in conjunction" in the said order of submission, is to give the power of decision as to which one of the said three types of hard surface shall be used in said road improvement to the committee, and the carrying into effect such decision requiring the action of the county court. (p. 595.)

Contracts, 13 C. J. §§ 486, 490.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

HATCHER, JUDGE, dissents.
MILLER, PRESIDENT, absent.

Original proceeding by the State, on the relation of Ned Winkler and others, for mandamus, to be directed to the County Court of Kanawha County.

*Writ awarded.*

*Poffenbarger & Poffenbarger,* for relators.
*E. S. Bock,* for respondents.

WOODS, JUDGE:

The county court of Kanawha county in an order bearing date August 3, 1927, calling a special election in Jefferson district for the purpose of issuing bonds in the sum of $220,000.00 for the construction of roads, as prayed for in a petition by a requisite number of voters of said district, in pursuance with the nominations contained therein of certain citizens and tax-payers of said district as the members of, and to constitute, a committee on behalf of the citizens and tax-payers "to act in conjunction with said county court in the selection of the kind of hard surface to be used in the construction of the road", incorporated the following: "It is therefore ordered that C. C. Delaney, Ned Winkler, George Wisman, J. W. Leonard and C. H. Zerkle, be and they are hereby appointed a committee to act in conjunction with this Court in the selection of the kind of hard surface to be used as aforesaid." This order, as well as the petition, specified

three different types of hard surface for use in the building of the road, to-wit: "concrete road of Portland cement", "Telford base with Bermudez asphalt surface, and 'napped base' with Bermudez asphalt surface". The bond issue carried and the result was declared in the manner prescribed by law, and, still later, the bonds were duly issued and sold and the proceeds thereof came into the hands of the county court, to be expended in the construction of roads in said Jefferson district. The county engineer upon direction of the county court prepared and filed specifications including and providing for each of the three kinds of hard surface. These specifications were approved.

In February of this year the county court issued and published its call for bids for the work, describing the road as "Project No. 193, grading, draining and paving of 4.55 miles of the Coal River Road, from St. Albans up Coal River to the intersection of the Tornado and Falls Creek road. Certified check $9,000.00."

Under that call, K. E. Reed & Company, a corporation, was the lowest bidder for cement construction, at $150,816.12, and G. T. Fogle & Company, a corporation, was the lowest bidder for napped stone base with asphaltic concrete surface type of construction, at $148,442.50. The County Court stood unanimously for acceptance of K. E. Reed & Company's bid for concrete construction, and the committee representing the taxpayers for the bid of G. T. Fogle & Company for the napped stone base construction. The bids were received and opened on March 20, 1928. Being unable to agree, the county court advised the committee that the awarding of the contract would be postponed until March 23rd. On that date, the Court sat again and the members of the committee met with it. A large number of the tax-payers of the district appeared, and the court insisted on a private meeting in the county engineer's office. An order was entered reciting that while "the committee explained to the court that the great concensus of opinion in said Jefferson district favored asphaltic concrete", the court adjourned further consideration of the contract, until April 5th, "that the people of said dis-

trict may give the matter further consideration before final decision."

On April 5th the court and committee again met. The court was unanimous for concrete and the committee in favor of asphaltic concrete road. The members of the committee after a discussion expressed themselves, two being in favor of napped stone base, and the others the Telford base. Then the court announced that, as there was a difference in this respect between the members of the committee it did unanimously award the contract for concrete construction to K. E. Reed & Company. The committee protested, and announced that, if the court should carry said award into effect, it would take legal steps to prevent it. Then the court retired from the court room and later re-appeared and announced, through its counsel, that further consideration of the matter would be postponed until 2:00 P. M. of that day. Before adjournment, however, the members of the committee, in open court requested that they be then permitted again to vote upon their choice of the type of construction, and, such permission being granted, they unanimously voted in favor of napped stone base with asphaltic concrete top. When the court reconvened that day, the committee was notified that, unless they would recede from their position, change their vote, and vote with the court, the court would reject all the bids received for said road on March 20th. The committee refusing to vote with the court, the court again appeared and caused to be read an order, reciting that a dead-lock between the court and the committee had occurred, and declaring all bids received for said road to be "Automatically rejected". Thereupon the committee objected to said action of the court, and again voted in open court unanimously in favor of asphaltic concrete construction, and moved the court to award the contract to the lowest bidder for this type of construction. On that motion, the court voted in the negative and the committee objected and excepted. On the 13th day of April, the court held another session for consideration of the subject, attended by the committee, and both the court and the committee adhered to their respective positions and nothing was done and no order was entered.

This was the status of the case when mandamus was sought in this Court against the county court of Kanawha county, and the members thereof, to compel them to proceed with the construction of said road in conformity with the terms and conditions of the petition, order of submission to the voters of said district, and authorization by the voters at said election, of the issuance of bonds thereunder, and, to that end concur with the petitioners (the committee duly appointed to represent the tax-payers and citizens of the said district) in the selection by said committee, of the kind of hard surface to be adopted and used in the construction of said road. Upon the filing of such petition an alternative writ was awarded. The return of the county court made the issue here.

The case turns upon the question of the power vested in the committee. In cases where the authorization of an issue of bonds, by a municipality is sought for public improvements, we have held that there may be annexed to the grant of such money for the purpose, measures not inconsistent with the law nor transgressive of any principle of public policy, limiting the discretion and powers of the county court, or other municipal authority, seeking assent to such bond issue, as to any such matters, or providing for representation by the tax-payers in the administration and use of the money. *Lawson* v. *County Court*, 80 W. Va. 612. In the principal case there was a provision in the order of the county court submitting to the voters of a magisterial district a bond issue proposition for a public road improvement, for the appointment of an advisory committee and requiring that the plans and specifications and the contracts for the construction of the work to be such as were approved by such advisory committee. The order contained the further provision that the work should not be paid for until inspected and approved by said advisory committee. In the language of the order, the committee named in that case was appointed "to act as an advisory committee" to the court in all matters relating to said road improvement, including the sale of bonds, employment of engineers, determining the kind of roads to be built

and materials to be used, letting of the contracts, approval of work and material used, etc., and the auditing and settling of accounts. It will be observed that the scope of the duty entrusted to the committee there was much wider than that given to the committee in the instant case where the committee was appointed for the one specific purpose, "to act in conjunction with the court in the selection of the kind of hard-surface to be used", i. e. (1) concrete road of Portland cement, (2) Telford base with Bermudez asphalt surface, or (3) napped base with Bermudez asphalt surface. In a later case (*Chrystal* v. *County Court*, 83 W. Va. 114) there was involved a bond issue for road purposes, in connection with the authorization whereof a committee was provided "to confer with the court in all transactions pertaining to the sale of bonds and the expenditures of the proceeds thereof". Judge WILLIAMS in the latter case, in marking the distinction between powers conferred upon the committee in the *Lawson* case, and conferred upon the committee in the *Chrystal* case, said: "Here the committee has no such powers. It could only advise the court who would still be at liberty to adopt or reject the advice or suggestion, as to it might seem best. But, in the *Lawson* case, the committee acted in conjunction with the county court, and its approval was made an essential pre-requisite to the validity of the contract for the work, and the right of the court to accept and pay for the work after it was completed. Here no such conditions or provisions are con-tained in the order submitting the bond issue to the voters. While in that case, by the very terms of the order, the com-mittee was vested with some of the powers which otherwise belong to and would have been exercised by the county court, here the committee had no power to prevent or restrain the court in the exercise of discretion over the matter in ques-tion." Thus, this Court, concisely interpreted the power conferred upon the committee in the *Lawson* case as power to act in conjunction with the county court as not being merely an advisory function, but upon the county court ignor-ing the committee and refusing to concur in its views and positions, and awarding a contract and proceeding to carry

it out, its action was enjoined. The latter action was taken on the theory that the contract was an illegal contract and that performance thereof and payment of money thereunder would be a diversion of funds raised by the bond issue from the purpose for which they had been raised. In the *Chrystal* case, a similar situation was presented, but it was held there that the committee was only clothed with an advisory power, as the language in the order of their appointment clearly imported. In these two cases the remedy sought was an injunction to prohibit action, while in the case now under consideration a writ is sought to compel action.

The right of the people to limit the discretion and powers of a county court by imposing a condition in the order submitting to the voters a bond issue to raise money for public improvements, in the administration and use of the money so raised, being established, there is left for determination only the question of what is a proper construction of the condition, imposed in this case. It is an axiomatic rule of construction that the intent of the parties to an instrument is the dominant, ruling factor in its interpretation, and that practically all other rules are subsidiary to the principle that the intent is controlling and must be allowed to have effect. To get its true intent it is necessary to read the order as a whole and give due effect to all of its terms and provisions, and consider the relation of the parties thereto. Ordinarily, a citizen has no power in the execution of the powers of a fiscal body of conditions in a bond issue. The law authorizes the voters of a district to bond the district for road improvements. But as we have already adverted to the people may lawfully impose restraint upon the court, by prescription. Upon a proper petition presented to the court, it becomes the ministerial duty of that body to call an election and submit the question of the issue of bonds for municipal purposes. In the case here, the condition under consideration was engrafted upon the petition. While the court might have refused to submit the question unless it was done free of the condition, it acceded to the desire of the petitioners by making the condition a part of the order of submission. It is significant

that powers of a general nature were not conferred on the committee as an advisory board. Such order limited the road to be constructed to one of three kinds. The committee were appointed to act in conjunction with the court in the selection of which one of three kinds of road was to be built. Such power as they had was limited to this one action. The committee unanimously favored the napped stone base type of construction while the county court stood for the cement concrete construction thereof. It is evident that the voters did not intend to submit to the decision of the court as to the kind of road to be constructed. Had there been no committee appointed in the instant case, the selection of the character of surface to be used rested in the county court. To hold that the county court may decide independently of the action of the committee, or in disregard of their expressed unanimous desire, would be to hold the appointment of the committee nugatory. A statute will not be construed as to deny it any effect. As tersely stated in 25 R. C. L. 1018: "One of the established rules of construction of statutes is that they should have rational sensible construction, if their meaning is at all doubtful. When the language of a statute fairly permits, a construction which will lead to an unreasonable result should be avoided." The provision under discussion here, being deemed contractual, the same rule applies. "If the manifest purpose of a contract is impossible of accomplishment in the manner in which it was intended to be effected, on account of a legal obstacle, but can be fully executed in a different way which is consistent in law, it must be permitted to operate in the latter mode." *Wilson* v. *Riffle,* 87 W. Va. 160. The order does not state that the committee's mission is to "act as an advisory committee", as was the case in the *Chrystal* case. It does say, however, that it is "to act in conjunction with the court". It is to the word "conjunction" and the kind of action imported by the ordinary meaning of this word that the county court pins its hope for approval of its course in refusing to take any action. It frequently has been the case that a word has been used in instruments in a looser or broader sense than the law attaches to it. In ascertaining

the true meaning in such cases courts do not confine their attention to single words, phrases, or even sentences. The meaning is sought from the whole instrument, viewed in the light of the subject with which it deals. When such intent is discovered the courts have no difficulty in giving it effect, though the result be to disregard the technical meaning of the word, phrase or sentence. *Quinlan* case, 211 U. S. 582, and cases there cited.

The people by their vote in the case here procured an issuance of nearly a quarter of a million dollars for road improvement. Are they to be deprived of the fruits of their action by a denial of the county court to take action merely because the committee voted for one kind of surface for road construction and the county court for another kind? By this action, the court in effect, concedes that it cannot adopt a kind of hard surface not assented to by the committee. The provision inserted in the order of submission at the instance of the voters meant something. It was meant to be workable. That some power was lodged in the committee is shown by the fact that its action was limited to one thing. Was it ever intended that the wishes of the five members be entirely ignored by the court? Or even overborne by it? We think not. How work in conjunction with the court? Not merely in an advisory capacity, but as a body in which is lodged the power of decision as to the character of surface to be used on the proposed improved highway, the county court being the legal vehicle to carry into effect such decision. May we not reasonably conclude that the decision of the one body and the action of the other carrying it into effect is the conjunctive action meant by the written provision inserted in the order of submission at the people's instance? We think so. Such construction put upon it makes it a workable plan, not inconsistent with law, and effectuates the purpose of the parties. Any other construction put upon it would render it a nullity.

By the return the county court challenges the merit of the kind of hard surface construction chosen by the committee. Evidence is introduced by it tending to show the superiority

of the kind selected by the county court over that adopted by the committee. This evidence was countered by the committee by testimony going to establish the pre-eminence of its selection over that of the county court's. This variant testimony is about evenly balanced. In any view of the case, it cannot be said to be so preponderant in favor of the respondent's position as to warrant our interference upon any legal or equitable ground with the choice made by the committee, whose rights in the premises we have hereinbefore determined.

*Writ awarded.*