# WHEELING.

## THORNBURG & SONS v. EMMONS et al.

. Submitted January 15, 1883—Decided December 20, 1883.

1. A bill of exchange payable at sight, is entitled to days of grace. (p. 334.)

2. If such a bill be protested for non-payment, and such protest does not show, that, at the time such protest was made, the time for the payment of said bill had expired, such protest and notice thereof to the drawer are not sufficient to show the dishonor of the bill and thus charge the drawer with the payment thereof. (p. 335.)

3. If such a bill of exchange be drawn upon a person as the treasurer of a railroad company, and the drawer has theretofore in the regular course of his business as an agent of said company been permitted to draw similar bills upon such drawee, which have always been accepted and paid by him, and the said bill of exchange be dishonored, such drawer is entitled to notice of such dishonor, although at the time he drew such bill he had no funds of his own in the hands of such drawee. (p. 334.)

4. It is the duty of the holder of such bill of exchange to put the same in circulation within a reasonable time, or present the same to the drawee for acceptance and payment, and if he fail to do so, and the bill be dishonored, the drawer will be discharged from liability. (p. 333.)

5. If such a bill be protested for *non-payment* before the same, according to the tenor and effect thereof, becomes payable and notice thereof be given to the drawer, such protest and notice are premature, and fix no liability on such drawer to pay the bill, and are the same as if no such protest had ever been made. (p. 335.)

6. Such a bill of exchange was drawn in Huntington, W. Va., which is distant from New York by railroad not more than sixty hours, on the 25th of August, 1873, upon the drawee at 54 Williams street, New York, who, at that time, and thence until the 19th of September, 1873, had in his hands sufficient funds applicable to the payment thereof, which would have been so applied had the bill been presented at any time before the 19th of September, 1873, when the drawee suspended payment, the drawee having between the date of the bill and the time of such suspension, paid out said funds upon similar bills drawn by the same drawer, after the 25th of August, and before the 19th of September, 1873; and the payee, having endorsed the bill to the holders on the 30th of August, 1873, who withheld it from circulation until the 15th or 16th of September, when they had the same discounted for their accommodation at a bank at Ironton, Ohio, and the bill was not presented to the drawee, either for acceptance or payment, until the 25th of September, 1873, when it was dishonored and protested for non-payment and notice thereof given to the drawer; upon an action brought by the holders, who were the endorsees of the payee of the bill, against the drawer, HELD:

Under such circumstances such laches on the part of such holders discharged the drawer from the payment of the bill. (p. 337.)

WOODS, JUDGE, furnishes the following statement of the case:

This was an action of *assumpsit*, brought in the circuit court of Cabell county, by Thornburg & Sons against D. W. Emmons and Harrison Derton, to recover the sum of one hundred and fifty dollars, the amount of a bill of exchange, dated August 25, 1872, drawn by said Emmons in favor of said Derton, on James J. Tracy, treasurer C. & O. R. R. Co., 54 Williams street, New York, payable *at sight*, and by said payee, on August 30, 1872, endorsed to the plaintiffs, who on September 15th or 16th, 1873, endorsed the same to the Second National Bank, at Ironton, Ohio, which endorsed the same to the Fourth National Bank, New York, which caused the same to be presented for payment "at 54 Williams street, New York," on September 25th, 1873, and the same not being paid, was on that day, protested for non-payment. The plaintiffs having paid the same to said Second National Bank of Ironton, and taken up the bill, brought their action of *assumpsit* to recover the same with charges of protest from

said drawer and endorser. The declaration contained the common counts, and also a special count, setting forth the above facts, and also that the defendants had due notice of the dishonor of the bill, and alleging in the usual form the promise of the defendants to pay, their neglect and refusal to do so, and the amount of damages which the plaintiffs had sustained by reason of the defendants' failure to pay. The defendants appeared and entered a general demurrer to the whole declaration, which the court very properly overruled. The defendants then pleaded *non-assumpsit*, on which issue was joined. On September 7th, 1877, the parties by their attorneys waived their right to a trial by a jury, and by like consent, the whole matter of law and fact arising in the cause was submitted to the court, who after hearing all the evidence rendered judgment "that the plaintiffs take nothing by their bill against the defendant Emmons, and that the defendant D. W. Emmons recover of the said plaintiffs his costs by him in his defence in this behalf expended, including five dollars as provided by statute."

The defendants thereupon moved the court to set aside said judgment, and grant them a new trial because its finding and decision, were contrary to the law and the evidence; which motion the court overruled and the plaintiffs excepted and the court certified the evidence and facts proved.

To this judgment a writ of error and a *supersedeas* were allowed by this Court, to the said plaintiffs who have assigned nine separate causes of error, which we may consider under the following heads:

1st. That it was improper to permit the defendant, Emmons, when examined as a witness on his own behalf to state that after the 25th day of August, 1872, he drew a number of drafts on the treasurer of the C. & O. Railroad Company which he never heard of afterwards, and that before the 25th day of August, 1873, he had drawn seven hundred and forty-five other drafts on J. J. Tracy, treasurer of the Chesapeake and Ohio Railroad Company, and that none of them had been protested.

2d. That the court erred in permitting the answers to the fifth and sixth questions in the deposition of the witness, J. J. Tracy, to be read in evidence; and

3d. In finding upon the evidence before it, in favor of the defendant, Emmons, and rendering a judgment thereon in his favor.

*James H. Ferguson* for plaintiffs in error.

*Simms & Enslow* and *William H. Hogeman* for defendant in error.

Woods, Judge :

From the plaintiff's bill of exceptions, the facts proved on the trial were, that the defendant, Emmons, drew and delivered to the defendant, Derton, on the day of its date his bill of exchange as follows :

                    "Huntington, W. Va., August 25, 1873.
"$150.00.        No. 746.

"At sight, pay to the order of Harrison Derton (fencing at Barboursville cut) one hundred and fifty dollars, value received, and charge the account of—

                              "D. W. Emmons.
"*To James J. Tracy, Treasurer C. & O. R. R. Co.*, 54 *Williams Street, New York.*"

Which the said payee on the 30th of August, 1873, endorsed to the plaintiffs, who, on the 15th or 16th of September, 1873, endorsed the same to the Second National Bank at Ironton, Ohio; that the said bank afterwards endorsed the same to the Fourth National Bank of New York, which on the 25th day of September, 1873, placed the same in the hands of a notary, who made in regard thereto, the following notarial protest :

"United States of America,
          "*State of New York, ss. :*

"On the 25th day of September, in the year of our Lord 1873, at the request of the Fourth National Bank of the city of New York, I, the subscriber, a notary public, duly commissioned and sworn, dwelling in the city of New York, did present the original draft or bill of exchange hereunto annexed at No. 54 Williams street, in the city of New York, (being the place where the said draft or bill of exchange is payable), and demanded payment thereof, which was refused.

Whereupon I, the said notary, at the request aforesaid, did protest, and by these presents do publicly and solemnly protest, as well against the drawers or endorsers of said draft or bill of exchange as against all others whom it doth or may concern, for exchange, re-exchange, and all costs, damages and interest already incurred and to be hereafter incurred for want of payment, of said, draft or bill of exchange.

"In testimony whereof, I have hereunto set my hand and affixed my seal at the city of New York aforesaid.

"R. A. PYM, *Notary Public.*

"LAW OFFICE OF LEE & ALFORD,
  "No. 20 Nassau Street, N. Y." }

That the said C. & O. R. R. Co. suspended payments on the 19th of September, 1873; that in August, 1873, and thence until the trial of this action, the defendant Emmons was, and had been, and still is the agent for the Chesapeake and Ohio Railroad Company; that since the 19th of September, 1873, the condition of said company has been one of suspension, and since that time it has been insolvent; that the said Emmons was first notified by Harrison Derton, about the 1st October, 1873, that the said bill was unpaid; that after the 25th of August, 1873, said Emmons drew a number of drafts on the treasurer of the C. & O. R. R. Co. and never heard of them afterwards; that said Emmons, before drawing the said draft in favor of Derton, had drawn seven hundred and forty-five drafts on J. J. Tracy, treasurer of the Chesapeake and Ohio Railroad Company, and none of them had been protested; that said Emmons had heard of the failure of the said company before Derton informed him that his draft had been protested for non-payment, and that at the time he drew said draft in favor of Derton said Emmons had no money on deposit with J. J. Tracy to pay it; that the said Tracy in the year 1873, was the secretary and treasurer of the Chesapeake and Ohio Railroad Company; that he had been such secretary and treasurer continuously from the 21st day of December, 1869, up to the 7th day of August, 1877, when his deposition was taken; that between the 25th of August, 1873, and the 19th of September, 1873, he had funds in his hands as treasurer of the Chesapeake and Ohio Railroad Company to pay said draft No. 746, drawn by D.

42

W. Emmons on the treasurer of said company at No. 54 Williams street, New York, for one hundred and fifty dollars payable to the order of Wm. Derton; that said company ceased paying its old indebtedness on the 19th of September, 1873; that the said D. W. Emmons after the 25th August, 1873, and before the 19th of September, 1873, drew thirteen similar bills on said treasurer, which were presented to, and paid by him between the last named dates, and that if said draft of one hundred and fifty dollars in favor of Derton dated August 25, 1873, had been presented to him before the 19th of September, 1873, it would have been paid; that said thirteen drafts, so drawn by Emmons and paid by said treasurer between the 25th of August and the 19th of September, 1873, amounted in the aggregate to the sum of two thousand nine hundred and fifty dollars and twenty cents; that the defendant Derton testified that Thomas Thornburg, one of the plaintiffs, notified him that the draft had not been paid shortly after the *bank suspended*, and that on the next day he told Emmons "the check had gone down" and that he could not get the money, and that he wanted the money paid and that Emmons said he would try and get it for Thornburg as soon as he could, and that he talked with Emmons three times about it and he always said the debt would be good and that it would have to have time; that the draft was for fencing done as he supposed for the railroad company; part was done on its land, and part on his own; that Emmons employed him to do it, and told him he would pay for it.

The plaintiff, Thomas Thornburg, a member of the firm of Thornburg & Sons, testified, that the said draft and certificate of protest were returned to the plaintiffs on the 1st of October, 1873, in a letter directed to them from Richard Mather, cashier of the Second National Bank at Ironton, Ohio, and notice of non-payment of the draft, came to the plaintiffs with the letter; that he gave notice of such non-payment to *Derton on the same day*; that after the draft was returned and before they brought this suit the plaintiffs paid the amount of said draft to said bank, and that they are the holders thereof; that a few days after the draft was returned he asked Emmons about the payment of it, and he said it could not be paid at that time, but that arrangements were

being made by which that, and other claims would soon be paid; that he asked Emmons at another time, if arrangements had been made for the payment of the draft, and he said "not yet" but that he had no doubt witness would get the money soon, and that at another time he said that said arrangements had not been made to pay it, but soon would be; that witness always looked to Emmons for the payment of the draft after its return protested; that Emmons did not mention the C. & O. R. R. Co. or say who was making arrangements, and that he never asked him to write to said company about said draft, nor did he ever inform him he ever had done so, *if he did it has escaped witness's recollection.* He proved that in August and September, 1873, the Chesapeake and Ohio railroad was in operation from the Ohio river to Richmond; that by railroad, the shortest route, it takes fifty-two or fifty-three hours to reach New York from Barboursville; that a man can reach Ironton from Barboursville in a day; that Ironton is sixteen miles below Huntington, and there is direct railroad communication between Huntington and New York, but Ironton is not on the railroad route to New York from Barboursville. The witness, in answer to the question propounded by the plaintiffs' counsel, "How long had the C. & O. railroad been in operation before August, 1873, and what was its credit prior to that time?" said, I think about eighteen months. The credit of the company was bad; that he didn't know anything about its credit as to the payment of such drafts, but that he had had drafts on the company similar to this drawn by said Emmons on same person, and they had all been paid. D. W. Emmons testified on his own behalf, that after he learned the draft had not been paid, he told Thomas Thornburg the company had got into difficulty but hoped it would come out all right soon; he asked witness if there was any way the debt could be paid, witness told him, none that he knew of, but that he would correspond with Tracy, and see what could be done; witness did write to him on the subject, and received an answer which he reported to said Thornburg, and that nothing could be done at present; that witness told him he was very anxious to see it paid as it was an honest debt; witness wrote a second letter to Tracy on the subject and

received an answer, that the company was in no condition to pay it, which was also communicated to said Thornburg; and witness told George Thornburg at Huntington in a conversation about the draft, that he was in correspondence with Mr. Tracy, and that witness was as anxious to have it paid, as he (Geo. T.) was to have it collected. Upon these facts, and this testimony, the court on the trial, acting in the place of a jury found that the plaintiffs were not entitled to recover of the said defendant Emmons, in this action, but that the said defendant was entitled to a judgment for costs against the plaintiffs.

The plaintiff excepted to the answers to the fifth and sixth questions asked the witness, Tracy, because the said thirteen drafts spoken of by him drawn and paid between the 25th August, 1873, and the 19th September, 1873, were not produced and filed, and because the questions call for the contents of written papers, and the witness gives the contents of them without producing them. One of the material questions arising in the trial of this action was whether due diligence had been used by these plaintiffs in presenting the bill for one hundred and fifty dollars for payment; another was whether the drawer was entitled to have said draft protested for non-acceptance, or non-payment; another was, whether want of diligence on the part of any of the successive holders of the bill had caused any loss, or injury to the drawer. It was therefore of the first importance to him to show, that from the regular course of dealings between the drawer and drawee, he had reasonable expectation that said bill, if presented, would be accepted and paid; whether there was in fact money deposited in the hands of the drawee, for the purpose of meeting this bill when presented for payment and if so, whether the same was sufficient for that purpose, and whether the same would have been so applied, and how long the money so remained applicable for that purpose. It was wholly immaterial to whom it was paid, or in what amounts it was paid to the several parties receiving it. The material inquiries were, were the funds there to meet the bill? were they sufficient for the purpose? had the drawer the right to have the same applied to his drafts, *to this bill*? was the money there so applicable to it at the time it might

or ought to have been presented? The witness had stated that he was the treasurer of said company, that he had paid seven hundred and forty-five similar drafts; that the money was there to pay this bill of one hundred and fifty dollars up to the 19th of September, 1873, and that it would have been paid, if presented, at any time before that day; and that he paid thirteen similar drafts of the same drawer, after the 25th August and before the 19th September, 1873. These facts he knew, and was competent to prove, independently of the contents of the drafts themselves, and therefore the court did not err in overruling said exceptions to the deposition of Tracy, and for the same reasons, the court did not err in overruling said exceptions to that part of the testimony of the defendant, Emmons, where he testifies that he had drawn said seven hundred and forty-five other drafts, and also the number of drafts drawn by him on Tracy between the said 25th August and 19th September.

Did the court in this case, sitting in place of a jury, err in finding for the defendant, upon the foregoing facts?

The draft sued on is a foreign bill of exchange, drawn at Huntington, W. Va., on J. J. Tracy, treasurer of the C. & O. R. R. Co., 54 Williams street, New York, payable at sight, by the defendant Emmons in favor of Wm. Derton. From the view we take of this case it is unneccessary to inquire whether it was given for the individual debt of the drawer, or for the debt of said Railroad Company, for in either case the rights of the drawer are the same. The contract between the drawer and drawee, is not an absolute promise to pay the money mentioned in the bill at all events, but is conditional. He is only responsible to the holder of the bill after default made on the part of the acceptor; and that the holder must first demand payment or use due diligence to demand it of the acceptor, before he can resort to the drawer. If the bill be payable at sight, no time is fixed for the payment thereof, but it must be presented for acceptance, and payment within a reasonable time. The courts have, in cases of bills payable at sight, or at any given time after sight, declined to lay down any rule prescribing what is a reasonable time in which they must be presented for acceptance, leaving the question in every case as it arises, to be determined by its

own peculiar circumstances, and if the bill be not presented within a reasonable time, the drawer is discharged, although the parties continue solvent, and there is no damage caused by the delay. Daniels Neg. Instruments, sec. 465; 1 Wait's Actions and Defences, p. 619; Chitty on Bills, 274; 1 Parson's Notes and Bills, pp. 263, 338, 383. But one of the circumstances affecting the question of what is reasonable time in such case is, whether the bill has been put in, and kept in circulation, for if it has been kept in circulation, the delay of a year or even more, would not necessarily amount to negligence. But if the holder retains possession of the bill for an unreasonable time, and thus locks it up from circulation, he makes it his own, and will have no remedy against antecedent parties from or through whom he derived title. Chitty on Bills, 275; *Robinson* v. *Ames,* 20 Johns. 146; Daniels on Nego. Inst. 434. And it has been held that a sight draft on New York, endorsed to the plaintiff in Wisconsin, and not mailed to New York for presentment for fourteen days, was *prima facie* evidence of laches, but might be rebutted. *Walsh* v. *Dart,* 23 Wis. 334. Many other circumstances may enter into the consideration of this question, but as none of them are found in the case under consideration, it is not necessary to consider them. In this case the facts show beyond all controversy that the drawer on August 25th, 1873, had reasonable, or just grounds to expect that the drawee would accept and pay the bill whenever the same was presented, and the time of payment arrived, and he was therefore entitled to notice of the dishonor of the bill. *Farmers Bank* v. *Vanmeter,* 4 R. and 553; *Robinson* v. *Ames,* 20 Johns. 146. Bills payable at sight, are by the law merchant entitled to the usual days of grace, although the form of the instrument does not appear to contemplate any delay. Edwards on Bills, 523; Chitty on Bills, 376; Daniels Nego. Instruments, § 617; Byles on Bills, 162; hence in cases of sight bills, as no day is fixed for payment, it is of importance to have the same presented to the drawee for acceptance, or they never could become payable, for no default for non-payment could be made, until they became due and payable, which could only be after the days of grace had expired. Sight bills are not

usually presented for formal acceptance only, but for payment; yet as such bills are entitled to grace it would seem to follow that payment thereof is not demandable when *first presented*, and therefore that protest for non-payment before the expiration of the last day of grace would be premature, and would create no cause of action against the drawer, who is not in default until lawful demand of payment be made and refused, and the draft duly protested for non-payment and notice thereof given him.. And as in every action brought by the holder of such a bill to charge the drawer, the burden of proof is upon him to show due diligence; to obtain payment of the bill, he must prove on the trial, either by the certificate of protest, or other competent evidence, that when payment of the bill was demanded the time for the payment thereof had expired. In the case under consideration, neither the certificate of protest nor any other evidence adduced on the trial in any manner tended to show that said bill for one hundred and fifty dollars had ever been in any manner or for any purpose presented to the said drawee at any other time than on the 25th of September, 1873. The bill therefore was not then due and payable according to the tenor and effect thereof, and did not become payable until the expiration of the three days of grace next thereafter, and the protest for non-payment on that day was premature, for there was no default made on the part of the drawee for the want of demanding payment on the last day of grace, and therefore a notice given of protest for non-payment would be a nullity. *Jackson* v. *Richards*, 2 Caines, 343; Byles on Bills, 139; *Griffin* v. *Goff*, 12 Johns. 424. Spencer, Justice, delivering the opinion of the supreme court of New York in the case last cited, says: "It is perfectly settled that to fix an endorser, the holder must demand or use due diligence to obtain payment of the note when it becomes due; and that when the maker makes default, he must give notice thereof with due diligence to the endorser. It is equally well settled that when a negotiable note is endorsed it is not demandable until the third day of grace, unless the third day be Sunday, in which case it is due on the second day; and that where notice is given to the endorser prior to the demand on the maker, it is null, as the

drawer was not in default when the notice was given." This is equally the law in regard to bills of exchange as to negotiable notes, for when paper is payable at a certain time, and in the case of bills payable at sight where these have days of grace, the last day of grace is of course the time at which non-payment operates dishonor, and this does not occur until the close of business hours, in banks and banking houses in our cities. Parson's Notes and Bills 262; Daniel Nego. Instr. 552 and note 5. In the case under consideration, we find that when said bill was drawn, and for twenty-four days thereafter, there were abundant means in the hands of the drawee to pay the same, if within that time it had been presented for acceptance or payment; that the payee retained the bill five days and then endorsed it to the plaintiffs, who instead of forwarding the same for acceptance or payment to the drawee in New York, where it could have been sent by railroad within sixty hours, retained the same in their possession for a period of at least sixteen days, locked up from circulation, and then instead of forwarding the same to the drawee for acceptance or payment, they sent it to the Second National Bank at Ironton, Ohio, and had the same discounted there for their own accommodation, whence it did not, so far as any evidence in this record goes, reach the drawee until the 25th of September, 1873, when the railroad company had suspended payment. The facts certified in this case make it absolutely certain that the retention of the bill until the 15th or 16th of September, 1873, when the same was sent to said bank at Ironton, made it almost physically impossible for that bank to have presented the bill to the drawee against the 19th of September, 1873, and that in so retaining it under these circumstances, added to the fact that they knew the credit of said company was not good, they have been guilty of such *laches*, as releases the drawer from all liability, even if such liability had been fixed upon him by due diligence in presenting the bill to the drawer for acceptance and payment, and giving him notice of such default of payment. But as we have already seen, there is no evidence in the record to show when the bill in fact became payable, and none to show that when it was protested, the time for the payment thereof had

fully expired; there is therefore no proof of the legal default of the drawee, and if there be no default upon him, there can be no liability upon the drawer. *Purcell* v. *Allemorg*, 22 Gratt. 739. It is however contended by the counsel for the plaintiff in error, that even if these facts be true, yet the drawer is still liable to the holder, because after the dishonor of the bill, he made an express promise to pay the same. But after a careful examination and consideration of all the facts in this record, we can find no promise of any kind made by the drawer to pay the bill, after it was dishonored.

The most that appears is, that the drawer when the payee said he wanted to get the money on the bill for Mr. Thornburg, said he would try and get it for him as soon as he could, that it had got with other old debts, that it would have to have a little time, and that it was a good debt, and that in conversation with Thomas Thornburg he spoke of arrangements being made to pay it, and that he had no doubt he would get the money soon. It is altogeher probable the drawer believed the debt was good and would be paid, but all such statements put together are very far from an express promise to pay the bill, which, as we have seen, he was in no manner bound to pay, and nothing less than such express promise can create such liability. In *Borradaile* v. *Lowe*, 4 Taunt. 94, Lord Mansfield said: "I do not find any case in which an endorser, having been discharged by the *laches* of the holder, has been held liable on his endorsement, except where an express promise to pay the bill has been proved."

From a careful consideration of the whole case, we are of opinion that the laches of the plaintiff in withholding the bill from circulation, and in failing to present the same for acceptance and payment for sixteen days, were sufficient in the absence of all testimony, showing any reasonable cause therefor to release the said drawer from all liability upon said bill, and therefore the circuit court of Cabell county did not err in finding that the plaintiffs were not entitled to recover of the defendant, Emmons, in this action, and in rendering judgment in favor of the said defendant for his costs, and therefore did not err in refusing to set aside its said judgment and award the plaintiffs a new trial.

We are therefore of opinion that the said judgment of the
43

circuit court of Cabell county must be affirmed, with costs to the defendants in error and thirty dollars damages.

AFFIRMED.