# CHARLESTON.

Slaymen Allie Slaymen *v.* First National Bank of Welch

(No. 6012)

Submitted September 14, 1927.   Decided October 4, 1927.

Bills and Notes—*Evidence Whether Payment of Drafts Was to be Made From Balance or From Account of Drawer's Agent Held to Present Jury Question; Under Evidence, Whether Delay of Almost Year in Presentation for Payment Discharged Drawer ·from Liability on Drafts Held Jury Question (Barnes' Code 1923, c. 98A, §§ 71, 79, 81, 114).*

A citizen of 'Syria, whose home was in Beirut, but who had resided in this State for several years, and was a customer and depositor of the defendant bank, desiring to return to his native country, and on account of unsettled conditions

there and to safely and securely transfer his money, applied to defendant for bills of exchange on London calling for pounds sterling, that he might cash at any time, and the bank, on August 16, 1922, sold him bills of exchange directed to "London County Westminister Parr's Bank, London, England," where it had no money on deposit, but thereafter without the knowledge of plaintiff arranged with New York brokers who had, to protect these drafts, but who in the meantime failed, and by which drafts it ordered the drawee to pay the payee "from balance against this check" the several sums specified, of which the two in suit were a part, the others from time to time having been negotiated, and paid by the drawee, but the two sued on not being negotiated until July 3, and August 6, 1923, respectively, and which when presented to the drawee a few days thereafter in London, were dishonored, and the first one protested, and the defendant notified by letter of the dishonor of the other, and both were later presented to the defendant, and payment refused, and then protested for non-payment, and notice given defendant:

Held, that it was a question for the jury to decide, (1) whether the contract was as represented by the plaintiff, and (2) whether under all the facts and circumstances shown in evidence, the delay of the plaintiff in negotiating the drafts and presenting them for payment to the drawee and want of other notice to the drawer was so unreasonable as to discharge the drawer from all liability thereon to the payee.

Error to Circuit Court, McDowell County.

Two actions in assumpsit by Slaymen Allie Slaymen against the First National Bank of Welch, tried together. Verdict for plaintiff. Judgment for defendant *non abstante veredicto,* and plaintiff brings error.

*Reversed; new trial awarded.*

*Samuel Solins,* for plaintiff in error.
*Strother, Sale, Curd & Tucker,* for defendant in error.

MILLER, JUDGE:

Two cases on assumpsit, tried in the circuit court as one, as per stipulation of counsel, and in which there was but one verdict of the jury. They were upon two bills of ex-

change issued by defendant to plaintiff on August 16, 1922, respectively as follows:

```
"No. 450584                          Welch, W. Va.
    Check for                         8/16 - 1922
400 P.ds. sterling                 Duplicate unpaid
Pay from balance against this Check to
    Slaymen Allie Slaymen               - or order
Four Hundred Pounds on London
To London Co. Westminster   First National Bank
    Parr's Bk.            (Signed) John B. Barley,
    London, England          Manager For. Dept."
```

The other, No. 450585, is the same in form and substance, except as to the number of pounds sterling called for.

The declarations contained the common counts with bills of particulars specifying the two instruments above described, and special counts on the same, and the presentation by the holders thereof within a reasonable time to the drawee bank in London, and the dishonor thereof by said drawee, and the protest of the said first described draft, and the subsequent presentation by plaintiff to the defendant for payment, its refusal thereof, and protest against it.

The only pleas filed were *non assumpsit* and a special plea that said bills were not presented for payment, or non-acceptance and due notice of their dishonor given to the defendant within a reasonable time.

On the trial before the court and jury on February 26, 1927, there was a directed verdict in favor of the plaintiff against the defendant for the value of the drafts in American money, with interest, for $5,415.01, which on motion of the defendant to set it aside and in arrest of judgment thereon, and for judgment for defendant *non obstante veredicto*, the circuit court set aside the verdict and pronounced the judgment complained of here, that plaintiff take nothing, and that defendant recover against him its costs herein incurred.

The controlling question presented by the pleading and proofs was whether the plaintiff, or holder, was so negligent in presenting for payment the bills of exchange sued on to the drawee, Parr's Bank, London, as to discharge it from liability thereon. The court, as evidenced by the verdict

directed, at first concluded that no such negligence as would discharge defendant, the drawer of the bills, was proven.

The evidence shows that on the date plaintiff purchased these bills from the defendant, he had on deposit in the defendant's bank about $10,000. Though a Syrian in nationality, he had resided in McDowell county, and had been engaged in business there, for several years, and that during that time he had done his banking business with the defendant; that having concluded to return to his native country, he so advised defendant through Barley, manager of its foreign department, explained to him that owing to the conditions prevailing in Syria he wished to purchase drafts for pounds sterling on London that he might be able to cash or collect at any time. The result of the negotiations was the drafts. similar to those sued upon drawn on Parr's Bank, London, for the full amount in pounds sterling of the money plaintiff had on deposit, all of which except those sued on had been collected and paid at intervals. Those sued on, however, were dishonored when presented to the bank in London; wherefore this suit.

It is stipulated and proven that the defendant bank at the time these drafts were so negotiated and delivered to the plaintiff, had no account with Parr's Bank, nor at any time before or since, nor any deposit there to meet these drafts, except that it had employed Knauth, Nachod & Kuhne, brokers in New York, to protect these drafts, who had on deposit in Parr's Bank, and up until suspension of payment by the receiver of said brokers, who had become insolvent in June 1923, funds equal to the amount of the two drafts. It was admitted by defendants that they had other banking and brokerage connections in New York, for carrying on their business of selling foreign exchange, besides the concern to which this business had been committed, and that they were then and are still solvent and safe financial institutions. Of the firm to which this business of transmitting plaintiff's money was committed, the defendant's cashier says: "They were our agents to protect and pay these drafts at the time, or within a reasonable time after, they

were issued, and when they were presented in their London office.''

The plaintiff had no notice whatever at any time until the drafts had been dishonored that defendant had entrusted the business of protecting them to these brokers, or to any other financial institutions.  He assumed, as the drafts themselves on their face indicate, that defendant had money with the drawee, and its direction to the drawee was to ''pay from balance against this check''.  Thorn, defendant's cashier, testified with reference to these brokers:  ''Our agents either had the money on deposit or the credit.  I don't know what system they had.''  What the actual condition of the account of these brokers at Parr's Bank was at the time the drafts were presented is not shown.  Thorn further testified in justification of the arrangement with these brokers to perform the contract, that ''the custom was to give the customer, the man who wanted to buy the foreign exchange, the foreign exchange on any country he wanted it, and then to arrange with the money broker in New York having international connections to make the deposit.  Naturally we couldn't make the deposit ourselves.''  There is some evidence tending to show that the defendant, pursuant to some arrangement with one Joe Hassen, an alleged representative of the plaintiff, had agreed to file these claims against the bankrupt's estate in the name of the bank, with the understanding that the sum collected, if any, should be paid over to the plaintiff, but the agency of Hassen is challenged, and his authority to in any way release the defendant from liability is controverted; and we do not think that any such power was established by the evidence, nor that the legal effect of what is claimed as the contract would discharge the defendant from its liability, if any, to the plaintiff on these drafts.

We have not here such a case as was before the court in *Thornburg & Sons* v. *Emmons et al.*, 23 W. Va. 325, much relied upon by the defendant in this case.  The *Thornburg* case involved a draft by the drawers upon the C. & O. Railroad Company and the insolvency of the drawee before presentment.  It was held that the failure of the holder of the draft to put it in circulation, or present it for payment within

sixteen days was sufficient, in the absence of all testimony showing any reasonable cause therefor, to release the said drawer from all liability upon the bill. The drawee of the present drafts, it is conceded, was and remains perfectly solvent. The plaintiff, as stated, had no notice or knowledge of the agency of Knauth, Nachod & Kuhne. He knew that the drawer of the bills was perfectly solvent and safe, and that the London Bank was competent and able to respond when the draft should be presented there, and he was content to rest on this security. He was not charged with notice that the defendant had undertaken to discharge its obligation to plaintiff through the brokers. It is true that Thorn, the cashier now but not when plaintiff bought the drafts in question and not then presented, undertook to say that plaintiff possibly knew and may have requested that they be drawn in that way, but he had no such knowledge. Plaintiff had defendant and Parr's Bank alone in mind as responsible to him for payment of these drafts. The other drafts had all been paid on presentation. The record shows that on July 3rd, 1923, plaintiff negotiated a 400 pound draft to Haddad, a broker and merchant in Beirut, Syria, who on August 9th, 1923, deposited it with the Banque Francaise de Syrie for collection from the drawee in London, and where it was a few days later presented for payment and dishonored, and duly protested.

It further appears that on August 6th, 1923, plaintiff also negotiated to Haddad the 600 pound draft, who on August 9th, 1923, also signed the same and deposited it with the Banque Francaise de Syrie for collection, and when presented to the drawee for payment, payment thereof was refused, of which defendant was promptly notified by plaintiff.

And when subsequently on October 8th, 1923, this draft was presented to defendant for payment at Welch, payment was there refused, and protest thereof duly had, and notice thereof given defendant. We think it unnecessary to detail more of the evidence in this connection.

On the question of negligence in presenting these drafts and notice of their dishonor by protest plaintiff relies mainly on two propositions; First: that the defendant had no money

or other thing to its credit in Parr's Bank, at the time of drawing the drafts, nor at any time subsequently; wherefore, it was not prejudiced in any way by the delay in presenting them to the drawer for payment; Second: that his contract and the face of the drafts called for pounds sterling payable from balance against this check (draft), not from the account of some agent or third person, and which he might be able to cash at any time, and which under all of the circumstances he did present in a reasonable time. The statute provides: "Presentment for payment is not required in order to charge the drawer where he has no right to expect or require that the drawee or acceptor will pay the instrument. Barnes' Code 1923, Chapter 98-A, Sec. 79. And Section 71 of the same chapter says: "Where the instrument is not payable on demand, presentment must be made on the day it falls due; where it is payable on demand presentment must be made within a reasonable time after its issue, *except* that in the case of a bill of exchange, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof." See also Secs. 81 and 114 same chapter. And it has been decided in New York and elsewhere that under the negotiable instrument law protest of a draft drawn on a foreign bank is not required, where the drawer had no money on deposit with the drawee with which to pay the check, and hence no right to expect or require that the drawee would pay it. *Ellenbogen* v. *State Bank,* 17 N. Y. Supp. 278.

The defendant relies on an exception to this general rule, which is that if the drawer have expectation that the drawee will honor the bill, or he has arranged with a third party to provide him with funds and he thereby has the right to expect or require that the drawee will honor the bill, he is entitled to presentment and notice of dishonor. 2 Daniel on Neg. Inst., Secs. 1076, 1078 and 1074. There is no doubt that when the facts are as assumed by defendant, presentment, protest and notice to the drawer and all endorsers of the bill must be made within a reasonable time or they will be discharged. Counsel for the parties have presented able and elaborate brief on these questions.

The turning point here on the merits of the case is whether defendant could and did discharge its contract with plaintiff by delegating performance to the New York brokers as stated. First, we observe the language of the draft, that it was drawn payable from "balance against this check," which could mean nothing other than that the drawer had an account on Parr's Bank against which the draft was to be charged, not that the drawer could or would be expected to perform its contract through other agents or the general channels of exchange. Knowing that defendant was responsible and could be made to account to him at any time and could not lawfully withdraw its money and relieve itself from liability, he might have been perfectly willing to accept the draft, but not otherwise. Second, we are impressed with the fact that he advised defendant's representative in charge of its foreign department that he wished to convert his deposit into exchange on London, which he might be able to cash at any time, calling attention to the conditions existing in Syria, to which country he was returning. If the contract was that plaintiff was to have bills that might be cashed at any time, it evidently meant within such reasonable time as was contemplated by the parties, considering all the circumstances attending the transfer of the funds by plaintiff and covered by the language of the bill. Was not the reasonableness of the time a question of fact for the jury? What is a reasonable time is fixed by no rigid rule. Each case depends on its own facts and circumstances. 8 C. J., 294, Secs. 463, 464, and cases cited in notes; 1 Daniel Neg. Inst., Sec. 470, et seq.

Plaintiff also relies on the distinction generally observed as to liability between the one who receives a compensation for the sale of exchange and one who issues his bill generally for accommodation, between one who deals in exchange as a source of profit and as a means of livelihood. In the case of the former, presentment for payment may be longer delayed than in the latter, when it should be made in a reasonable time. *Marbourgh* v. *Brinkman*, 23 Mo. App. 511. In this case defendant charged and received from plaintiff a very substantial commission for the bill and thereby and from

former dealings engaged for a service which plaintiff required and needed, considering the distance the bills had to go and the safety sought in making the exchange.

By its ruling in setting out the verdict of the jury and entering judgment for defendant *non obstante veredicto,* the court said that plaintiff was not entitled to recover as a matter of law. This is the only theory on which the judgment can be justified. From what we have said on the character of the contract and facts developed on the trial, we are unable to concur in the judgment. When the declaration states a good cause or action, and an issue of fact is presented, the court cannot by such a judgment take the case away from the jury and give judgment for the defendant *non obstante veredicto. Holt* v. *Otis Elevator Co.,* 78 W. Va. 785. A judgment *non obstante veredicto* must be predicated upon the merits of the case as disclosed by the pleadings, not in any sense upon the evidence adduced thereunder, nor to serve the purpose of a demurrer to reach merely formal defects in the declaration. *Shafer* v. *Security Trust Co.,* 82 W. Va. 618.

Wherefore we are of the opinion to set aside the judgment for defendant entered *non obstante veredicto,* but to affirm it in so far as it set aside the verdict as directed by the court "to find for plaintiff the particular sum of $5,415.01". As held in the opinion, the questions of fact, depending on the evidence, should have been submitted to the jury for their verdict. The court was not justified in directing the jury as to what they should find from the evidence. So the judgment here will be that the judgment *non obstante veredicto* be reversed and the parties be awarded a trial *de novo.*

*Judgment reversed; new trial awarded.*