BOWLBY-HARMAN LUMBER COMPANY

*v.*

COMMODORE SERVICES, INC.

(No. 10978)

Submitted February 3, 1959.    Decided March 17, 1959.

*Baker & Armistead, Charles S. Armistead,* for plaintiff in error.

*George R. Farmer, Benjamin G. Reeder,* for defendant in error.

GIVEN, PRESIDENT:

Plaintiff, Bowlby-Harman Lumber Company, instituted its action of trespass on the case against Commodore Services, Inc., in the Circuit Court of Monongalia County, for recovery of damages alleged to have resulted from negligence of defendant, in the burning of a gasoline service station building owned by plaintiff. On the trial to the jury the plaintiff offered proof tending to establish that the fire which destroyed the building was the result of negligence of defendant in using gasoline, near open flames, to clean the floor of the building, and that the resulting fire damaged plaintiff in the amount of $8,370.61. The defendant offered no evidence to contradict that of plaintiff, either as to negligence or as to the amount of damages. At the conclusion of the trial the court refused to direct a verdict for plaintiff, but did direct a verdict for defendant, and denied a motion of plaintiff to enter a judgment for plaintiff, notwithstanding the verdict for defendant, and entered judgment for defendant.

The declaration alleges, in effect, that the defendant, on March 30, 1957, was engaged in the business of selling gasoline and other petroleum products on property owned by plaintiff, and on which the building destroyed by fire was situated; that defendant negligently used gasoline in the cleaning of the floor of such building, near gas heaters in which open flames were burning; and gases from such gasoline came into contact with the flames, resulting in an explosion, fire and destruction of the building.

Defendant filed its plea in abatement, alleging that process issued in the action was void for the reason that it was returnable to Rules of the Circuit Court of Monongalia County on the first Monday of September, 1957, that being Labor Day, and that the Judge of the Circuit Court of Monongalia County, on August 7, 1957, directed the holding of a special term of that court to commence on Tuesday, the third day of September, 1957; and that the circuit court did sit in special term on that day. The reply to the plea in abatement was to the effect that the

term of court referred to therein was not a regular, but a special, term called for the third day of September, 1957, which facts were admitted by defendant to be true.

The defendant filed the general issue plea and also filed its Special Plea No. 1, alleging in effect that by lease dated April 16, 1954, plaintiff leased the premises on which the building destroyed by fire was situated to Elk Refining Company for a period of ten years from August 1, 1954, and that such lease contained the following paragraph: "The Lessor agrees to insure the buildings and improvements upon the leased premises against damage by fire, with so called extended coverage, in an amount equal to the full insurable or reasonable value thereof, in solvent insurance companies authorized to do and doing business in the State of West Virginia, and to pay promptly all premiums upon such insurance. All such policies of insurance shall be carried in the joint names of the Lessor and the Lessee, as their respective interests may appear, and the proceeds of any such policies of insurance shall constitute a trust fund and shall be expended for the purposes above set forth."

The special plea further alleged that the Elk Refining Company, by writing dated July 15, 1954, "did lease" the same premises to a partnership composed of Cecil R. Parsons and Helen Galik for the "entire period covered" by the lease executed to the Elk Refining Company; that plaintiff had knowledge of such writing, and knowledge that Parsons and Galik entered into possession of such premises; that subsequently defendant succeeded to the rights and title of the partnership to such premises, and entered into possession thereof as the "successor and assign" of Elk Refining Company; that subsequent to the fire plaintiff filed proof of claim of loss by reason of the fire, and received from the insurance company which had issued the policy the full amount of the loss, which was "paid to the plaintiff and by it held as a trust fund and used to repair and restore said building and premises", as provided in the lease from plaintiff to the Elk Refining Company. Attached to and made part of the

written instrument from Elk Refining Company to the partnership was a "Dealer Agreement" whereby Parsons and Galik agreed to purchase from Elk Refining Company certain petroleum products. The Dealer Agreement contained this provision: "* * * (b) that Dealer shall indemnify and save harmless the Company of and from any and all liability or claims for loss, damage or injury to persons or property (including, but not by way of limitation, the Dealer and his agents, servants, employees and representatives, and the property of any of them) caused or occasioned by any leakage, fire or explosion of petroleum products stored in any tank or contained or drawn through any pump * * * whether the same arises from negligence or otherwise * * *".

Plaintiff's special replication to the special plea alleges, in effect, that the lease executed by the Elk Refining Company to the partnership was not for the same term, conditions or property as contained in the lease from plaintiff to Elk Refining Company, in that the term in the lease from plaintiff was for a term of ten years, while the term provided in the lease from Elk Refining Company was for one year from "the 1st day of August, 1954, and shall automatically continue thereafter from year to year for a period of nine (9) additional years. Provided, however, the Lessee shall have the right to cancel this lease at the end of any yearly period by giving to the Lessor sixty (60) days written notice of such intention"; in that the monthly rental provided in the lease to Elk Refining Company was $250.00 per month, plus one cent per gallon for each gallon of gasoline sold on the premises in excess of fifteen thousand gallons per month, while in the lease from Elk Refining Company the rental was two hundred dollars per month for the first six months, and two hundred fifty dollars per month thereafter, payable only to Elk Refining Company; in that the lease from Elk Refining Company contained no provision relating to fire insurance as did the lease from plaintiff; in that the purposes for which the property was to be used by the respective lessees were not the same; in that the pro-

visions in the respective leases relating to repairs were not the same; in that there was included in the lease from Elk Refining Company considerable personal property owned by Elk Refining Company; and in that the provisions of the respective leases differed materially in other respects. The instrument from Elk Refining Company to the partnership, exhibited in evidence, contained other provisions to the effect that the partnership could cancel the lease at the end of any year; that the lease could not be assigned without the written consent of Elk Refining Company; that in the event of default on the part of the partnership as to any covenant, including the covenant to pay rent, Elk Refining Company "shall have the right to terminate this lease and re-enter and take possession" of the premises; that "Bankruptcy or insolvency" of the partners "shall immediately terminate this lease"; and that "Lessor expressly reserves to itself all the rights of landlords under the statutes of West Virginia relating to landlords and tenants". Plaintiff also replied generally to defendant's Special Plea No. 1, on which issue was joined.

The plaintiff demurred to Special Plea No. 1 of defendant, on the ground that the facts alleged in the plea, though true, would constitute no defense to the action based on the negligence of defendant. The court overruled the demurrer. The defendant demurred to the replication of plaintiff to Special Plea No. 1, which demurrer was sustained by the court.

The several instruments mentioned are exhibited as evidence. There existed no written instrument transferring any right, interest or title to defendant. There is also exhibited in evidence an instrument evidencing the payment of the sum representing the fire loss, referred to as a "Loan Receipt", executed by the plaintiff, which, insofar as appears material, reads: "Dated May 8, 1957 Received from the Monarch Insurance Company (hereinafter referred to as Company) the sum of Eight Thousand Three Hundred Seventy and 61/100 Dollars ($8,370.61) as a loan, without interest, repayable only

in the event and to the extent of any net recovery the undersigned may make * * * and as security for such payment the undersigned hereby pledges to the said Company all his, its or their claim or claims against said person, persons, corporation or corporations or other parties or from any insurance carrier or carriers, and any recovery thereon, [and] * * * undersigned covenants and agrees to cooperate fully with the said company, to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name.

"In further consideration of said advance the undersigned hereby guarantee(s) that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoint(s) the managers and/or agents of the said 'Company' and their successors severally, his, its or their agent(s) and attorney(s) in fact, with irrevocable power to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'Company', any & all legal proceedings that the said 'Company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purposes of this agreement.

"Any legal proceedings are to be under the exclusive direction and control of said 'Company'."

The check given in payment of the sum mentioned in the Loan Receipt was drawn to the order of plaintiff and the Elk Refining Company, and indorsed and delivered by Elk Refining Company to plaintiff, and the funds received by plaintiff were expended in the re-building of the service station building.

We first consider the question relating to the validity of process, raised by the plea in abatement, the action of the trial court in overruling the plea being assigned as cross error. In *Baggs* v. *Freiberger,* 140 W. Va. 560, 85 S. E. 2d 841, we held void process made returnable to the "first Monday, which was September 7, 1953, was a legal holiday, to wit, Labor Day, and Tuesday, September 8, 1953, was the first day of the September term of the Circuit Court of Wetzel County * * *", for the reason that the process was not returnable to a Rule Day as required by Code, 56-4-1. That section of the Code requires that "rules shall be held on the first Monday of every month, whether the court be in session or not", except in certain instances, and specifically provides when Rules shall be held in such instances. Code, 51-2-4, provides that the judge of any circuit court may, "whenever he thinks the public interest requires it", by merely directing his warrant to the clerk, "appoint a special term thereof"; and further provides that the clerk shall "issue all proper process returnable to such special term"; and that "the sheriff shall execute such process". No time for notice as to the commencement of a special term is specified, and no reference is made in the section to Rule Days. It becomes clear then, we think, that the provisions of Code, 56-4-1, considered in light of provisions of Code, 51-2-4, apply only to terms of circuit courts which are regular statutory terms. To hold otherwise would often result in the invalidation of process regularly issued and made returnable at regular Rule Days by the mere calling of a special term, or limit the power of a judge of a circuit court as to the time for the calling of a special term, directly contrary to the statutory provision permitting the calling of a special term "whenever he thinks the public interest requires it". No such result could have been intended.

The controlling contentions of defendant, on which it relies to sustain the action of the trial court in directing a verdict in its favor, relate to its theory that the written instrument executed by Elk Refining Company to the partnership constituted an assignment, not a sublease,

of all rights created by the lease from plaintiff to the Elk Refining Company, including the right to be free from liability as to its own negligence in the burning of the building; that the action should not have been prosecuted in the sole name of plaintiff; that the Elk Refining Company and the plaintiff being joint insurers, the action necessarily would have to be prosecuted by them jointly; and that the evidence discloses that plaintiff was contributorily negligent.

In 51 C.J.S., Landlord and Tenant, Section 37, subsection a, it is said: "Regardless of the form of the transaction, an assignment of an estate for years occurs where, and only where, the lessee transfers his entire interest in the estate without retaining any reversionary interest"; and in subsection b it is said: "A sublease occurs where a lessee underlets the premises or a part thereof to a third person for a period less than the lessee's term. If the lessee reserves to himself a reversionary interest in the term, it constitutes a sublease, however small the reversion, and regardless of the form of the instrument. A reservation of even so short a period as the last day of the term will be sufficient. Nevertheless, it is essential to the creation of a sublease that a reversionary interest should be retained, however small it may be. The persuasive elements of a sublease have been said to be exclusive possession, a fixed term, a fixed rental, and a right of reentry in event of covenant broken." See 32 Am. Jur., Landlord and Tenant, Section 313, et seq.

In 1 Tiffany Real Property, Third Edition, Section 123, it is said: "A transfer by the tenant of an estate in the whole premises less than his own estate is, it is generally agreed, a sublease and not an assignment, the transferor's estate becoming one in reversion, a 'sub-reversion'. And it is immaterial in this regard that the estate transferred is but slightly less than that of the transferor * * * And it has been held that an instrument transferring the premises from the lessee to a third person on new and different terms and conditions, with

reservation of the right of re-entry for breach of the covenants, is, as between the lessee and his transferee, a sublease, although it transfers the whole term, and as between them the relation of landlord and tenant subsists, the instrument showing that such was the intention of the parties."

Though the rule for determining whether an instrument constitutes an assignment or a sublease is almost uniformly stated, there exists no semblance of uniformity in applying the rule to facts of particular cases. In this State the intention of the parties to a contract governs its meaning and effect, and such intention is gathered from the entire language of the instrument. See *Magnus* v. *Halltown Paper Board Co.,* 143 W. Va. 122, 100 S. E. 2d 201; *Kanawha Banking and Trust Co.* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225; *Clayton* v. *Nicely,* 116 W. Va. 460, 182 S. E. 569; *State ex rel. Winkler* v. *County Court of Kanawha County,* 105 W. Va., 589, 148 S. E. 674; *Taylor* v. *Buffalo Collieries Co.,* 72 W. Va. 353, 79 S. E. 27. The principle was applied in determining whether an instrument constituted an assignment or a sublease in the case of *Jaber* v. *Miller,* 219 Ark. 59, 239 S. W. 2d 760.

Considering the provisions of the instrument executed by Elk Refining Company to the partnership referred to above, the only instrument under which the defendant can assert any right, we are of the view that the same is clearly a sublease, and that the defendant can not assert any right thereunder which would release it from liability, because of the provisions therein relating to fire insurance, or otherwise. A reading of the several provisions contained in the instrument to the partnership makes clear, we think, that the entire interest of Elk Refining Company was not transferred to the partnership by that instrument. The specific reservations and conditions, as well as the different rental and term provisions, all indicate, and we believe establish, a clear intent on the part of both the Elk Refining Company and the partnership to create the relationship of lessor and

lessee, not that of assignor and assignee. See *Barkhaus* v. *Producers' Fruit Co.*, 192 Cal. 200, 219 P. 435; *Burton* v. *Chesapeake Box & Lumber Corp.*, 190 Va. 755, 57 S. E. 2d 904; *Winkler* v. *Appalachian Amusement Co.*, 238 N. C. 589, 79 S. E. 2d 185. Moreover, to relieve a party from liability for his own negligence by contract, language to that effect must be clear and definite. See *Winkler* v. *Appalachian Amusement Co., supra; Brophy* v. *Fairmont Creamery Co.*, 98 Neb. 307, 152 N. W. 557; *Carstens* v. *Western Pipe and Steel Co. of California*, 142 Wash. 259, 252 P. 939; *Cerny-Pickas & Co.* v. *C. R. Jahn Co.*, 4 Ill. App. 2d 164, 123 N. E. 2d 858; *Hardware Mutual Insurance Co. of Minnesota* v. *C. A. Snyder, Inc.*, 242 F. 2d 64. The holding that the instrument executed by Elk Refining Company to the partnership was not an assignment of the original lease renders other contentions inapplicable to the facts in the case, except the contention of plaintiff that judgment should have been entered for it notwithstanding the verdict for defendant.

In *Dunbar Tire & Rubber Co.* v. *Crissey and Riley*, 92 W. Va. 419, 114 S. E. 804, we held: "1. In a civil suit a judgment will not be rendered *non obstante veredicto* unless the merits of the case, as disclosed by the pleadings, justify such judgment. Where a conclusion as to the rights of the parties involves a consideration of the evidence, and the court comes to the conclusion that the jury's verdict is not supported thereby, a judgment *non obstante veredicto* will not be rendered, but a new trial will be granted upon motion of the party adversely affected by such verdict." In the opinion it is pointed out that the judgment complained of was "not based alone upon the pleadings in the case, inasmuch as the plaintiff would not be entitled to recover upon the face of the pleadings without the introduction of any evidence", a circumstance present in the instant case. It was also pointed out in the opinion in the cited case that certain prior holdings of this Court were to the effect that a judgment *non obstante veredicto* might be entered if the court found that the verdict of the jury was "without

sufficient evidence" to support it. Such prior holdings were then expressly overruled. This Court has since followed the holding quoted from the cited case. See *Morris* v. *Nelson*, 136 W. Va. 722, 68 S. E. 2d 9; *Thomason and Beggs* v. *Mosrie*, 134 W. Va. 634, 60 S. E. 2d 699; *Slaymen* v. *First National Bank of Welch*, 104 W. Va. 265, 139 S. E. 750.

The demurrer of plaintiff to defendant's Special Plea No. 1 should have been sustained. The judgment complained of is reversed, the verdict of the jury is set aside, plaintiff is awarded a new trial, and the case is remanded to the Circuit Court of Monongalia County.

*Reversed;*
*verdict set aside;*
*new trial awarded.*