EASTERN GAS AND FUEL ASSOCI-
ATES, Appellant,

v.

MIDWEST–RALEIGH, INC., a corpora-
tion, the Travelers Insurance Company,
a corporation, Interstate Engineers &
Constructors, Inc., a corporation, the Fi-
delity and Casualty Company of New
York, a corporation, Alma Jean Jones,
Administratrix of the Estate of Robert
L. Jones, Deceased, Evelyn Elizabeth
Ice, Administratrix of the Estate of Gay
W. Ice, deceased, Arlie Spry, William
J. Ice, and William E. Zirkle, Appellees.

No. 10750.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 12, 1967.

Decided March 7, 1967.

See also, D.C., 234 F.Supp. 580.

Russell L. Furbee, Fairmont, W. Va.
(Thomas J. Whyte and Furbee, Hardesty,
Critchfield & Whyte, Fairmont, W. Va.,
on brief), for appellant.

Willis O. Shay, Clarksburg, W. Va.
(Steptoe & Johnson, Clarksburg, W. Va.,
on brief), for appellees.

Before J. SPENCER BELL and WINTER, Circuit Judges, and RUSSELL, District Judge.

J. SPENCER BELL, Circuit Judge:

This is a declaratory judgment action brought by Eastern Gas and Fuel Associates, which seeks an adjudication of its right to indemnity or contribution for its liability arising out of a gas explosion that occurred at its Federal No. 1 coal mine at Grant Town, West Virginia. Eastern appeals from a district court judgment holding that it was entitled to neither indemnity nor contribution.

On April 30, 1962, Eastern entered into an agreement to sell to defendant Midwest-Raleigh, Inc., an old cleaning plant, tipple structure, aerial tram, and coal hoist building located at the Grant Town coal mine. By the terms of the contract Midwest was to furnish all labor, supervision, equipment, tools, etc., necessary to dismantle and remove the equipment and structures. Midwest agreed to "exercise extreme care in the performance of this work to prevent fire and/or other damage or accident * * *" and to "protect and indemnify Eastern against loss or damage to property and injury and death to persons resulting from, arising out of or incident to the performance of this contract." It was further agreed that Midwest would maintain bodily injury and property damage liability insurance to cover any liability arising from performance of the contract; defendant Travelers Insurance Company wrote the insurance policy for Midwest. In accordance with the contract, certificates of insurance were submitted to Eastern's insurance manager before any work pursuant to the contract was commenced. Thereafter, with the approval of Eastern, Midwest employed

Interstate Engineers and Constructors, Inc., as subcontractor to perform the work required by the contract between Midwest and Eastern, and Interstate adopted the terms and conditions of that contract. For the protection of Midwest, Interstate acquired from defendant Fidelity and Casualty Company of New York an insurance policy in material respects identical to the Travelers policy taken out by Midwest pursuant to its agreement with Eastern.

On July 16, 1962, an explosion occurred in the area of the coal mine where Interstate's employees were working, and as a result two of Interstate's employees were killed and three others injured. Interstate's operations at the coal mine site centered around a 46-ton concrete slab which covered an open mine shaft, and the explosion apparently resulted from an accumulation of methane gas under the slab. Four suits arising out of this accident were commenced against Eastern in a Pennsylvania federal district court and subsequently were transferred to the United States District Court for the Northern District of West Virginia.[1] Eastern brought Interstate and Midwest into the suits as third-party defendants, claiming that it was entitled to indemnity under its contract for any liability arising from the accident.[2] This declaratory judgment action had been commenced in the same West Virginia district court prior to transfer of the four cases originally brought in Pennsylvania, but, by agreement of counsel with concurrence of the court, hearing of this case was postponed until the question of Eastern's liability had been determined in one of the damage actions. On May 10, 1965, trial was begun of one of the wrongful death actions against Eastern. Although Interstate and Midwest were formally

1. Civil Action File No. 63–508 was brought by the three injured Interstate employees against Eastern for personal injury damages; Civil Action File No. 63–509 was a wrongful death action brought against Eastern by the administratrix of Robert L. Jones, an Interstate employee who was killed by the explosion; Civil Action File No. 63–510 was a wrongful death action brought by the administratrix of Gay W. Ice, the other Interstate employee killed by the explosion; and Civil Action File No. 63–511 was a suit for property damage brought by Interstate against Eastern.

2. Of course, only Midwest was a third-party defendant in the suit brought by Interstate as plaintiff. See note 1 supra.

third-party defendants in that case, neither took an active part in the litigation because it was agreed by counsel that submission of the contractual indemnity issue to the jury might be confusing. It was agreed that the indemnity issue would be reserved for submission to the court after trial of the wrongful death case if the jury verdict was adverse to Eastern. Obviously a verdict in favor of Eastern would have avoided the indemnity issue raised by the third-party complaint.

Judgment was entered against Eastern based upon a jury verdict in the amount of $25,000.00; the judgment was subsequently paid by Eastern. The case at bar was by agreement of the parties submitted to the court without a jury upon the pleadings of the declaratory judgment action and the record of the wrongful death action. The court held that Eastern was not entitled to recover from Midwest and Interstate under the indemnity clause of the contract because that clause could not be construed to indemnify Eastern against its own negligence. The court further held that it was conclusively bound by the jury determination in the wrongful death case that the negligence of Eastern was the *sole* proximate cause of the accident and that Interstate was free from contributory negligence. Eastern challenges the correctness of both of the district court's determinations.

It is Eastern's position that the following provision of the contract indemnifies it against any liability arising from performance of the contract, whether or not that liability arose as a result of its own negligence:

"Purchaser [Midwest and Interstate] will protect and indemnify Eastern against loss or damage to property and injury and death to persons resulting from, arising out of or incident to the performance of this contract.

"Purchaser, during the period of this contract will maintain Bodily Injury Insurance in limits of not less than $500,000. per accident, and property damage of not less than $500,000.

to cover any liability including collapse arising out of the removal and dismantling, clean-up work, loading and transporting of the items stated herein."

In construing the indemnity provision, we must apply the law of West Virginia. There are no applicable statutes, and we have found only one statement of the West Virginia Supreme Court of Appeals relevant to the construction of such provisions: "[T]o relieve a party from liability for his own negligence by contract, language to that effect must be clear and definite." Bowlby-Harman Lumber Co. v. Commodore Services, Inc., 144 W.Va. 239, 248, 107 S.E.2d 602, 607 (1959) (dictum). The district court was apparently of the opinion that specific language stating that Eastern will be indemnified against its own negligence is necessary to fulfill the "clear and definite" requirement. We cannot agree.

Some courts have held that in order for an indemnitee to be indemnified against his own negligence, the indemnity contract must contain express language to that effect. E. g., Schwartz v. Merola Bros. Constr. Corp., 290 N.Y. 145, 48 N.E.2d 299 (1942); Southern Pac. Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944). See Annot., 175 A.L.R. 8, 28–32 (1948), and cases cited therein. Others have held that something less than an express statement is required; the language of the contract must merely show a clear intent of the parties that the indemnitee's negligence be indemnified. E. g., Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F.2d 256 (5 Cir. 1961); Cacey v. Virginia Ry., 85 F.2d 976 (4 Cir. 1936); Stern v. Larocca, 49 N.J.Super. 496, 140 A.2d 403 (1958). Although the West Virginia Court of Appeals has not decided the question, indications are that it would adopt the latter view.

In the case of Borderland Coal Co. v. Norfolk & W. Ry., 87 W.Va. 339, 104 S.E. 624 (1920), the West Virginia court held that contracts of indemnity against one's own negligence are not

against the public policy of West Virginia. In deciding that question, the court implicitly approved as sufficient to indemnify against the indemnitee's negligence the following contractual provision: "To indemnify and save harmless the railway company for or on account of any loss or damage which may at any time in any manner arise to the second party from the use or operation of the said siding or spur track by the railway company." Id. at 340, 104 S.E. at 624. We find no indication that West Virginia would not follow its usual rule of contract construction—ascertainment of the intent of the parties as "gathered from the entire language of the instrument" [3] —to determine whether a contract clearly and definitely indemnifies the indemnitee against his own negligence.

■ In our view, the contract is "clear and definite" in its indemnity of Eastern against all liability arising from performance of the contract, despite its own negligence. The contract unqualifiedly provided that Midwest, and its successor Interstate, were to indemnify Eastern for "injury and death to persons resulting from, arising out of or incident to the performance" of the contract and to provide insurance to cover "*any* liability." (Emphasis added.) Under West Virginia law, "when the language used in a written instrument is susceptible of more than one interpretation, courts will look at the surrounding circumstances which exist at the time a contract in writing was entered into, the situation of the parties, and the subject matter of the instrument * * *." Kanawha Banking & Trust Co. v. Gilbert, 131 W.Va. 88, 107–108, 46 S.E.2d 225, 236 (1947). The contract in question was to be performed in a mining area, by its nature potentially highly dangerous. That the parties anticipated the danger is manifested by the contract requirement that Midwest (and its successor Interstate) perform "with all safety precautions" and "exercise extreme care." Under such circumstances, Midwest (and subsequently Interstate) agreed without limitation to indemnify Eastern against liability, and to maintain insurance to cover any such liability. It is reasonable to assume that Midwest would have insisted upon the addition of some limitations and exceptions to the broad language of the indemnity provision if it had not intended to assume all liability.

■ Moreover, unless construed to indemnify Eastern, whether or not negligent, the provision would be meaningless. See Union Pac. Ry. v. Ross Transfer Co., 64 Wash.2d 486, 392 P.2d 450 (1964). If Interstate were primarily negligent and Eastern were not negligent at all or merely secondarily negligent, Eastern would in law have a right to indemnity from Interstate without the necessity of an agreement to that effect. Restatement, Restitution § 96 (1937); Restatement, Agency (Second) § 401 (1958). It is a general tenet of contract law that a construction which gives meaning to all words and provisions of a contract is favored.

Because we have concluded that Eastern is entitled to indemnity from Midwest and Interstate, we do not reach the question whether or not the district court was correct in giving res judicata effect to the jury's finding in the wrongful death case that the explosion was caused by the sole negligence of Eastern.

The judgment of the district court is reversed, and the case is remanded for entry of judgment in accordance with this opinion.

Reversed.

---

3. Bowlby-Harman Lumber Co. v. Commodore Services, Inc., 144 W.Va. 239, 247, 107 S.E.2d 602, 607 (1959).